281 So.2d 487 (1973)
STATE of Florida ex rel. J. Bruce VINING, Relator,
v.
FLORIDA REAL ESTATE COMMISSION, Respondent.
No. 41138.
Supreme Court of Florida.
April 4, 1973.
Rehearing Denied September 12, 1973.
Edward C. Vining, Jr., and R.M. MacArthur, Miami, for relator.
Robert L. Powe, for respondent.
McCAIN, Justice.
Relator, a licensed real estate broker, was charged by the Florida Real Estate Commission with alleged violations of the *488 Real Estate License Law.[1] Inter alia, the information alleged four counts of failure to maintain trust funds in an escrow account in violation of Fla. Stat. § 475.25(1)(i), F.S.A.; four counts of breach of trust and dishonest dealing in a business transaction in violation of Fla. Stat. § 475.25(1)(a), F.S.A.; two counts of concealment and misrepresentation in a business transaction in violation of Fla. Stat. § 475.25(1)(a), F.S.A.; one count of failure to obtain a new registration certificate or otherwise inform the Commission of a change of business address as required by Fla. Stat. § 475.23, F.S.A.; one count of sharing offices with attorneys in violation of Commission Rule 315A-10.07;[2] and one count of engaging in a "course of conduct or practices showing he is so incompetent, negligent, dishonest and untruthful that the money, property, transactions and rights of investors or those with whom he may sustain a confidential relation may not safely be entrusted to him, all in violation of Fla. Stat. § 475.25(3), F.S.A."
Under protest, and "not waiving but on the contrary reserving each, every and all of his constitutional, both State and Federal, privileges, rights and immunities, particularly including, but not limited to his right to be accorded due process of law and his right not to be compelled to be a witness against himself ..." relator filed a sworn answer denying the specified charges as required by Fla. Stat. § 475.30(1), F.S.A., and Commission Rule 315A-16.01.[3] Additionally, relator moved to quash the information pursuant to Fla. Stat. § 475.30(2), F.S.A., alleging, inter alia, that (1) the requirement of a sworn answer violated his right to remain silent; (2) that he was denied due process of law by Commission rules limiting the taking of discovery depositions; and (3) that the Commission acted beyond its jurisdiction in undertaking to adjudicate questions of law. The motion to quash was denied by the Commission.
Thereupon, suggestion for writ of prohibition was filed by relator in this Court re-alleging the issues raised by motion to quash before the Commission. We issued the rule nisi and subsequently denied a motion to quash and dismiss for lack of jurisdiction.
We consider first relator's argument that the filing of a sworn answer pursuant to Fla. Stat. § 475.30(1), F.S.A., and Commission Rule 315A-16.01 violates the right to remain silent guaranteed to him by the Fifth Amendment to the U.S. Constitution and Article I, Section 9 of the Florida Constitution, F.S.A. The oppugned statute provides in pertinent part:
"(1) The defendant named in an information shall file with the commission a verified answer thereto, and, if he be so advised, a motion to quash the information, on or before the date fixed in the notice required by § 475.26. The filing of an answer to the information shall waive any defect in, or objection to, the notice, or want of notice. The answer shall admit or deny each fact alleged, except mere matters of inducement, or formal allegations, in the information, or avoid the effect thereof by a recital of the facts as defendant conceives them to be, and each issuable fact not denied in one of the manners aforesaid, shall be deemed to be admitted. No admission or allegation of the defendant made in an answer, motion or on the trial, shall be evidence against him in any civil or criminal proceeding, except upon a trial of a charge of perjury against him. All allegations of an answer not admitted in the information shall be deemed denied by the plaintiff.
......
"(3) If no answer or motion to quash shall be filed on or before the date fixed in the notice prescribed in § 475.26, or within the time as it may be enlarged, *489 the chairman shall enter an order declaring the defendant to be in default, the allegations of the information shall be taken as true, and a final order may be entered, ex parte, at any subsequent meeting of the commission."
Commission Rule 315A-16.01 interprets the quoted statutory language in the following manner:
"The language as contained in subsection F.S. 475.30(1), F.S.A., is construed to mean that both an answer and a motion to quash shall be filed within the time specified in Section F.S. 475.26, F.S.A. A motion to quash not accompanied by an answer will be returned to the party or his counsel filing the same unless an answer is filed within the time required, or any authorized extension thereof, and a default will be entered. The filing of an answer shall not be construed as a waiver of any objection to the information specified in a motion to quash, except as specifically provided in subsection F.S. 475.30(1), F.S.A."
Amendment V to the United States Constitution guarantees that "No person ... shall be compelled in any criminal case to be a witness against himself." Fla. Const. Article I, § 9, F.S.A., is similarly (if somewhat more broadly) worded: "No person shall ... be compelled in any criminal matter to be a witness against himself." It is these provisions on which relator relies in seeking to overturn Fla. Stat. § 475.30(1).
Respondent correctly points out that this Court recently upheld the validity of the questioned statute in Kozerowitz v. Stack, 226 So.2d 682 (Fla. 1969). However, the foundation for that decision was provided by an earlier decision of the Third District Court of Appeal, Robins v. Florida Real Estate Commission, 162 So.2d 535 (Fla. App. 3rd, 1964), wherein the Court concluded as follows:
"As to the second point, the provisions of § 475.30(1), Fla. Stat., F.S.A., requiring the filing of a sworn answer, do not constitute a violation of the petitioner's constitutional rights against self-incrimination. The proceedings involved are not criminal, but administrative in nature, and there is no violation of constitutional rights because of the requirement that the information be met with a sworn answer."
Thus, the decisive factor in Robins was the fact that the proceedings were administrative rather than criminal. Hence, the prohibitions of the Fifth Amendment did not apply.
Subsequent to the Robins decision, however, the right to remain silent was extended to proceedings "penal" in nature whether classified as criminal in the traditional sense or not, thereby bringing into question the premise from which both Robins and Kozerowitz were reasoned. In In Re Gault,[4] the U.S. Supreme Court, noting that juvenile delinquency proceedings, while not criminal per se, may lead to commitment in a state institution, made the following observations:
"The privilege against self-incrimination is, of course, related to the question of the safeguards necessary to assure that admissions or confessions are reasonably trustworthy, that they are not the mere fruits of fear or coercion, but are reliable expressions of the truth. The roots of the privilege are, however, far deeper. They tap the basic stream of religious and political principle because the privilege reflects the limits of the individual's attornment to the state and  in a philosophical sense  insists upon the equality of the individual and the state. In other words, the privilege has a broader and deeper thrust than the rule which prevents the use of confessions which are the product of coercion because coercion is thought to carry with it the danger of unreliability. One of its purposes is to *490 prevent the state, whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the state in securing his conviction."
......
"Against the application to juveniles of the right to silence, it is argued that juvenile proceedings are `civil' and not `criminal,' and therefore the privilege should not apply. It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person `shall be compelled in any criminal case to be a witness against himself.' However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory."
"It would be entirely unrealistic to carve out of the Fifth Amendment all statements by juveniles on the ground that these cannot lead to `criminal' involvement. In the first place, juvenile proceedings to determine `delinquency,' which may lead to commitment to a state institution, must be regarded as `criminal' for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the `civil' label-of-convenience which has been attached to juvenile proceedings."
Admittedly, the juvenile proceedings described in Gault are different in type and possibly more serious in scope than the administrative action at issue in the instant case. However, Gault is significant for our purposes because it marks the beginning of a continuing trend toward application of the privilege against self-incrimination to "penal" proceedings regardless of their "criminal" status in the orthodox sense.[5]
An illustrative case in point is Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). There, a disbarment proceeding for professional misconduct was brought against petitioner Spevack, a member of the New York Bar, alleging refusal of petitioner to honor a subpoena duces tecum requiring production of financial records and his refusal to testify at the judicial inquiry. Petitioner's sole defense was that the production of the records and his testimony would tend to incriminate him. The Appellate Division of the New York Supreme Court ordered petitioner disbarred, holding that the constitutional privilege against self-incrimination was not available to him as a lawyer. On certiorari, the U.S. Supreme Court reversed, relying on dissenting language in Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961) and the majority opinion in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).[6] In pertinent part, the Court commented:
"In 1964 the Court in another five-to-four decision held that the Self-Incrimination *491 Clause of the Fifth Amendment was applicable to the States by reason of the Fourteenth. Malloy v. Hogan .. ."
"And so the question emerges whether the principle of Malloy v. Hogan is inapplicable because petitioner is a member of the Bar. We conclude that ... the Self-Incrimination Clause of the Fifth Amendment has been absorbed in the Fourteenth, that it extends its protection to lawyers as well as to other individuals, and that it should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it. These views, expounded in the dissents in Cohen v. Hurley, need not be elaborated again.
"We said in Malloy v. Hogan: `The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement  the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.' 378 U.S. at 8, 84 S.Ct. at 1493, 12 L.Ed.2d at 659. "In this context `penalty' is not restricted to fine or imprisonment. It means, as we said in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the imposition of any sanction which makes assertion of the Fifth Amendment privilege `costly.'
......
"The threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege. The threat is indeed as powerful an instrument of compulsion as `the use of legal process to force from the lips of the accused individual the evidence necessary to convict him... .' United States v. White, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542, 1546, 152 A.L.R. 1202."
In our judgment, logic and reason demand that the rationale of Spevack be applied not only to disbarment proceedings, but as well to other types of administrative proceedings which may result in deprivation of livelihood. Certainly, threatened loss of professional standing through revocation of his real estate license is as serious and compelling to the realtor as disbarment is to the attorney. In succinct terms, it is our view that the right to remain silent applies not only to the traditional criminal case, but also to proceedings "penal" in nature in that they tend to degrade the individual's professional standing, professional reputation or livelihood. Spevack v. Klein, supra; Stockham v. Stockham, 168 So.2d 320 (Fla. 1964).
In the instant case, the penalty for failure to respond by means of a sworn answer to charges made by the Real Estate Commission is the entry of a default judgment against the defendant which may result in suspension or revocation of the realtor's license. Fla. Stat. § 475.30(3), F.S.A. Thus, it is apparent that the Fla. Stat. § 475.30(1), F.S.A., has a coercive effect in that it requires a defendant to answer allegations made against him or suffer possible loss of livelihood. The requirement that the answer be "verified" or sworn to produces an additional coercive effect in that it exposes the defendant to a possible perjury proceeding if he does not respond truthfully to the charges against him. However, we regard the latter effect of the statute as secondary in importance to the fact that the defendant is required to respond at all. The basic constitutional infirmity of the statute lies in requirement of a response under threat of license *492 revocation or suspension, which amounts to compelling the defendant to be a witness against himself within the meaning of the Fifth Amendment to the U.S. Constitution and Article I, § 9 of the Florida Constitution, F.S.A.
It is not our intention to attempt "judicial legislation" to correct the infirmities of Fla. Stat. § 475.30(1), F.S.A. Until the Florida Legislature enacts new legislation to replace the expunged language, the Real Estate Commission will be required to proceed without responses from realtors charged with violations of the Real Estate Licensing Law. However, we do not view this state of affairs as imposing an undue hardship on the Commission. In criminal matters the State must prosecute without benefit of a statement from the defendant, unless the defendant, within the framework of his constitutional rights and privileges, volunteers information to the State. Since the burden of proving the defendant's guilt is the obligation of the State in any event, requiring the defendant to speak would amount to compelling the defendant to prove the State's case for it. This, of course, is the evil sought to be remedied by the Fifth Amendment right to silence.
The same situation obtains in the instant case. As in other types of disciplinary proceedings,[7] the burden of proving relator violated the Real Estate Licensing Law is on the Real Estate Commission as the initiator of the proceedings.[8] Thus, by requiring the defendant to answer, the Commission is clearly seeking to shift to defendant the burden of proving his own guilt. As we have said, this result is constitutionally impermissible. Presumably, a legislative enactment allowing but not requiring a defendant to answer would not be constitutionally objectionable, but we are not confronted with such a provision here.
We are not impressed by relator's remaining assertions. It is axiomatic that a party does not have a vested right to any particular remedy or form of proceedings. The record does not disclose that relator was denied due process of law because of Commission rules limiting the taking of discovery depositions. He has been fully informed of the nature of the charges against him and is entitled to be heard and to present all matters in his own defense at a hearing before the Commission. This is all that is necessary to afford due process of law in an administrative proceeding.[9]
Lastly, with regard "to questions of law", it is well established that administrative bodies vested with "quasi-judicial" authority frequently must adjudicate questions of law in the exercise of their powers. However, since the adjudication of questions of law is in the last analysis a purely judicial prerogative, the exercise of this power by an administrative agency is reviewable by a court of competent jurisdiction. State ex rel. Williams v. Whitman, 116 Fla. 196, 150 So. 136, 156 So. 705, 95 A.L.R. 1416 (1934); State ex rel. Sbordy v. Rowlett, supra. We find no error on this point.
Accordingly, the writ of prohibition is issued and respondent is hereby restrained and prohibited from enforcing Fla. Stat. § 475.30(1) to the extent that requires a defendant in a discipline proceeding before the Real Estate Commission to respond to the charges against him. The cause is remanded *493 to the Real Estate Commission with directions that the answer of relator previously filed before that body be expunged from the record, and for such further proceedings not inconsistent with this opinion as the Commission may wish to undertake.
It is so ordered.
ROBERTS, Acting C.J., and ERVIN, ADKINS and DEKLE, JJ., concur.
NOTES
[1] Chapter 475, Florida Statutes, F.S.A.
[2] Now renumbered to Rule 21V-10.07.
[3] Now renumbered to Rule 21V-15.01.
[4] 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
[5] See for example, Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (discharge of police officers for invoking the right to silence reversed); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (discharge of patrolman reversed); and Uniformed Sanitation Men Association v. Commissioner of Sanitation of City of New York, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (unconstitutional to dismiss sanitation employees for refusal to waive privilege against self-incrimination).
[6] The "majority" opinion in Spevack was concurred in by Justices Douglas, Warren, Black and Brennan. Justice Fortas concurred in the judgment but was of the opinion that a distinction should be made between the attorney's right to remain silent and that of a public employee who is asked questions relating to the performance of his official duties. Justice Fortas went on to note: "I agree that Spevack could not be disbarred for asserting his privilege against self-incrimination." Thus, a true majority of the Court concluded that the right to silence was applicable to the lawyer and operated to prevent his disbarment as a penalty for its invocation.
[7] For example, see The Florida Bar v. Schonbrun, 257 So.2d 6 (Fla. 1971) which places on The Bar the burden of proving by clear and convincing evidence the misconduct of an attorney.
[8] Ringo v. Owens, 54 So.2d 366 (Fla. 1951); Reid v. Florida Real Estate Commission, 188 So.2d 846 (Fla.App.2d, 1966).
[9] State ex rel. Munch v. Davis, 143 Fla. 236, 196 So. 491 (1940); State ex rel. Railroad Commissioners v. Florida East Coast R. Co., 64 Fla. 112, 59 So. 385 (1912); State ex rel. Hand v. McDonald, 154 Fla. 456, 18 So.2d 16 (1944); State ex rel. Jordan v. Pattishall, 99 Fla. 296, 126 So. 147 (1930); State ex rel. Sbordy v. Rowlett, 125 Fla. 562, 170 So. 311 (1936).