**D.L. CROMWELL INVESTMENTS, INC., Lloyd Bierne, David S. Davidson, Eric S. Thomas, and Matthew Greenwald, Plaintiffs–Appellants,**

v.

**NASD REGULATION, INC., Defendants–Appellees.**

Docket No. 01–7301.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 2001.

Decided Feb. 1, 2002.

---

Martin P. Russo, Peekskill, NY, for plaintiffs-appellants.

Terri L. Reicher, Associate General Counsel, National Association of Securities Dealers, Inc., Washington, DC, John J. Flood, on the brief, for defendants-appellees.

Before MESKILL, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge.

Plaintiffs-appellants D.L. Cromwell Investments, Inc. ("Cromwell") and individual Cromwell employees, all members of the National Association of Securities Dealers, Inc. ("NASD"), have been the subject of ongoing investigations both by NASD Regulation, Inc. ("Regulation"), which is an investigatory arm of the NASD, and by federal prosecutors. They have sued to enjoin NASD Regulation from compelling them—under threat of sanctions authorized by NASD Rule 8210—to submit to on-the-record interviews, arguing that NASD Regulation is a willing tool of the prosecutors and that the compelled inter-

views would therefore violate their Fifth Amendment privilege against self-incrimination.

They appeal from the judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*), rejecting the claim on the finding that Regulation was not a state actor subject to constitutional restraint, but was rather a private party conducting a private investigation. The preliminary injunction hearing was consolidated with the trial on the merits (over Cromwell's objection) after the district court heard testimony from witnesses for both Cromwell and NASD, and before the rendering of the decision.

On appeal, appellants argue essentially: (1) that they were prejudiced by the consolidation because in so doing the court denied their request for a necessary two-week delay to pursue discovery, and erroneously employed the merits-based "preponderance of the evidence" standard of proof rather than the less onerous "serious questions" standard available in preliminary injunction proceedings; and (2) that the district court erroneously held that because Regulation is not a state actor, it cannot be subject to the Fifth Amendment restraint.

## I

Regulation is the regulatory arm of the NASD, a private, not-for-profit, self-regulatory organization registered with the Securities and Exchange Commission ("SEC"), of which appellants are members. Regulation is responsible for "conducting investigations and commencing disciplinary proceedings against [NASD] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations." *Datek Securities Corp. v. National Ass'n of Securities Dealers, Inc.*, 875 F.Supp. 230, 232 (S.D.N.Y.1995). Regulation's Division of Enforcement ("DOE") conducts regulatory investigations and disciplinary hearings, and imposes sanctions that are subject to multiple layers of administrative and judicial review, including appeals within the NASD, and appeal to the SEC under a *de novo* standard.

One group within the DOE—the Criminal Prosecution Assistance Unit ("the Unit")—assists federal and state authorities in their investigations of securities matters. The Unit's activities are self-contained, and it performs no other function. It is a small department consisting of a lawyer, an examiner, and an investigator. It is sometimes granted access (pursuant to court order) to grand jury materials, which it is required to shield from the rest of the DOE and to not divulge. Its one lawyer, Bruce Bettigole, is occasionally designated a Special Assistant United States Attorney as part of his duties. *See* 28 U.S.C. § 543 (providing for the appointment of special attorneys to assist United States attorneys).

Notwithstanding the separation of the Unit's duties from those of the DOE, there is some administrative overlap between it and the rest of DOE: Bettigole is subordinate to the Deputy Director and the Director of the DOE; Bettigole shares a secretary with a DOE lawyer; the workspace of the Unit's examiner and its investigator is surrounded by DOE staff; the Unit's telephone, fax, and computer services are shared with the rest of the DOE.

The facts as found by the district court and supported by the record, demonstrate that in October 1998, the DOE opened an investigation concerning Cromwell's involvement in the trading of shares in Pallet Management Systems, Inc. ("Pallet"). Soon after, the United States Attorney for the Eastern District of New York and the

FBI opened their own investigations into the same transactions.

In November 1998, the FBI (as part of its investigation) asked the Unit for certain documents concerning Pallet, which the Unit was aware related to Cromwell's involvement in Pallet. The Unit turned over the documents.

In March 1999, a DOE lawyer and a DOE examiner went to Florida to inspect Cromwell's books and gather documents. Soon after, the FBI called the DOE lawyer, who conveyed general information to the FBI concerning the contents of the documents inspected in Florida. In response to a later formal request, the DOE allowed the FBI access to the Cromwell documents.

During the summer of 2000, the U.S. Attorney's Office for the Eastern District of New York and the DOE shared details about the progress of their respective investigations. Specifically, prosecutors divulged to the DOE information from a cooperating witness. Additionally, the DOE and prosecutors learned from each other that they were both investigating Pallet and Cromwell's involvement in Pallet.

At this time, the Unit was assisting the U.S. Attorney's Office in the U.S. Attorney's efforts to secure a search warrant for Cromwell's Brooklyn office. After execution of the warrant by the U.S. Attorney, Bettigole and another Unit staff member reviewed the seized documents to determine whether any were relevant to a separate, long-standing, criminal investigation in which the Unit was involved.

In November 2000, the DOE demanded certain documents from Cromwell. Cromwell responded that many of the requested documents had been seized by federal agents. A DOE staff member then asked Cromwell and the U.S. Attorney's Office for an inventory of the seized documents. Cromwell supplied an illegible copy of the inventory, and the U.S. Attorney's Office told the DOE that the Unit already had the list. The DOE soon obtained a legible inventory from the Unit, and later procured a number of the documents from the U.S. Attorney's Office.

In December 2000, the Unit helped the U.S. Attorney's Office prepare a grand jury subpoena for materials related to Pallet to be served on an entity called Fiserv. The terms of the subpoena allowed Fiserv to comply by electronic transmission, but because of a technological incompatibility between Fiserv and (both) the FBI and the U.S. Attorney's Office, Fiserv was allowed to comply by transmitting the information to the Unit.

Subsequently, the DOE served demands (pursuant to NASD Rule 8210) for on-the-record interviews of individual appellants. NASD Rule 8210 grants the DOE "the right to ... require a member ... to provide information orally, in writing or electronically ... and to testify at a location specified by [DOE] staff ... with respect to any matter involved in [an NASD] investigation." NASD Rule 8210(a)(1)(CCH). Appellants commenced this suit to enjoin those demands.

■ We review the district court's decision to consolidate the hearing for a preliminary injunction with a trial of the action on the merits under Rule 65(a)(2) for abuse of discretion. *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 102 (2d Cir.1985). We review the district court's findings of fact for clear error and its holdings of law *de novo*. *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir.2001).

## II

Under Fed.R.Civ.P. 65(a)(2), "[b]efore or after the commencement of the hearing of

an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Cromwell argues that in this instance the consolidation of the preliminary injunction hearing with the trial on the merits was an abuse of discretion. *See Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 102 (2d Cir. 1985).

■ In its strongest formulation, Cromwell's argument is that while it had a fair shot (even without discovery) at securing preliminary relief by raising sufficiently serious questions to show a balance of hardships tipping decidedly in its favor, *see Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996) (internal quotations omitted), it would have needed further weeks of discovery in order to support its heavier burden at a trial on the merits, and that the district court, therefore, should have put off its ultimate decision once the district court had determined that preliminary relief was not warranted, and granted Cromwell's request for an opportunity to pursue its discovery request.

The argument, however, is hard to square with Cromwell's contention, prior to the preliminary injunction hearing, that the question was urgent and could not be deferred. Thus, when Cromwell was seeking a prompt hearing, it argued that Regulation's Rule 8210 demands would cause irreparable harm—there and then—by forcing individual appellants to choose between foregoing their Fifth Amendment privilege (and risking criminal prosecution) or exposing themselves to NASD sanctions.[1] *See Bery v. City of New York,* 97 F.3d 689, 693 (2d Cir.1996) (holding that a

movant for a preliminary injunction "must first demonstrate that it is likely to suffer irreparable harm in the absence of the requested relief"). The irreparable harm was said to arise from individual appellants' refusal to submit to the impending testimony, and the hearing sought was to decide what all parties saw as the sole issue of the case: whether Regulation is a state actor.

The district court, upon recognizing the state action issue as "the whole ballgame," exercised discretion to order consolidation at the close of the hearing. Transcript of Preliminary Injunction Hearing at 115, *D.L. Cromwell v. NASD Regulation,* 01 Civ. 728 (S.D.N.Y. Feb. 15, 2001). Cromwell, anticipating defeat, objected for the first time that an adjudication on the merits would require a two-week delay to pursue discovery, and argued that the delay for it would, in fact, cause *no* immediate harm, because if individual appellants refused to testify, the NASD itself would stay any suspension during the protracted NASD appellate procedure. Sound or not, this argument contradicted the claim of urgency that evidently induced the court to immediately hear the preliminary injunction motion in the first instance.

If the district court had been advised that Cromwell could avoid testifying without immediate suspension while it enjoyed an essentially automatic stay by virtue of the administrative appeals process, the court might have afforded additional time for discovery; at the same time, however, the court might have put off consideration of preliminary relief, or conducted a hearing under less urgent circumstances. In denying a delay for discovery, the district

---

1. Specifically, Cromwell argued: "Plaintiffs irreparably will be harmed if the preliminary injunction is not issued.... Regulation does not deny that ... [it] will swiftly move to have the individual Plaintiffs barred [from the se-

curities industry] if they do not testify." Plaintiffs' Reply Memorandum of Law in Support of Motion for Preliminary Injunction at 9, 9 n. 7, *D.L. Cromwell v. NASD Regulation,* 01 Civ. 728 (S.D.N.Y. Feb. 8, 2001).

court merely credited Cromwell's original position—based on its initial claim of inflexible urgency—and rejected its later and contradictory argument that the issue would keep almost indefinitely. That decision was not an abuse of discretion.

Additionally, Cromwell maintains on appeal that the district court failed to provide proper notice of its intent to consolidate. *Woe v. Cuomo*, 801 F.2d 627, 629 (2d Cir. 1986) ("Courts may consolidate a trial on the merits with a hearing on a motion for preliminary injunctive relief only after 'the parties ... receive clear and unambiguous notice [of the court's intent to do so] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'") (quoting *Pughsley v. 3750 Lake Shore Drive Co-operative Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972)) (alterations in original); *Abraham Zion*, 761 F.2d at 101 (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).

Cromwell, however, was on notice from the outset that its claim hinged on the issue to be decided at the preliminary injunction hearing. The complaint emphasized the Fifth Amendment state actor question and that resolution of that discrete issue controlled disposition of what Cromwell, itself, termed its "very *narrow*" claim for injunctive relief. Complaint at 1, *D.L. Cromwell v. NASD Regulation*, 01 Civ. 728 (S.D.N.Y. Jan. 30, 2001) (emphasis in original).

Moreover, the district court provided additional notice to Cromwell, announcing six days before the hearing that "[t]he issue is the state action issue; essentially, whether these 8210 requests are fairly attributable to the government." Transcript at 22, *D.L. Cromwell v. NASD Regulation*, 01 Civ. 728 (S.D.N.Y. Feb. 9, 2001).

In any event, even if the district court's comments were too "oblique" to "clear[ly] and unambiguous[ly] notice" the hearing as a trial on the merits, *Woe*, 801 F.2d at 629 (citing *Pughsley*, 463 F.2d at 1057), Cromwell cannot demonstrate that it suffered prejudice by consolidation. *Abraham Zion*, 761 F.2d at 101 ("Given the broad discretion accorded the district court by Rule 65(a)(2), the court's order of consolidation will not be overturned on appeal absent a showing of substantial prejudice in the sense that a party was not allowed to present material evidence."); *see also Irish Lesbian and Gay Organization v. Giuliani*, 143 F.3d 638, 646 (2d Cir.1998) ("[A] failure to ... notify a party [of consolidation] which results in prejudice is grounds for reversal.").

█ To show prejudice, Cromwell must point to some relevant evidence that it was "prevented from presenting ... because of the consolidation." *Reese Pub. Co., Inc. v. Hampton International Communications, Inc.*, 620 F.2d 7, 12 (2d Cir.1980); *see also Johnson v. White*, 528 F.2d 1228, 1231 (2d Cir.1975) ("[I]n order to obtain a reversal for such an error, a party must show, not only surprise but 'prejudice' in the sense of having other material evidence to introduce."). On appeal, Cromwell points out that it rested on its affidavits at the close of the hearing—before the district court announced its decision to consolidate. However, Cromwell has not alleged that it would have done otherwise had the district court's intent to consolidate been expressed more clearly. Rather, Cromwell argues that consolidation allowed no interval for *subsequent* discovery. *See, e.g.*, Memorandum of Law in Support of Plaintiffs' Motion for New Trial Pursuant to FRCP 59(a), *D.L. Cromwell v. NASD Regulation*, 01 Civ. 728 (S.D.N.Y. Mar. 9, 2001). Any such prejudice, however, was caused by Cromwell's own tactical choice

to pursue immediate relief, not by the consolidation decision.

Moreover, Cromwell's application for a two-week discovery period before a hearing on the merits looks very much like a fishing expedition. On appeal, Cromwell specifies three witnesses it needed to depose: present and former Regulation employees Roger Sherman, Linda Walters, and John Long. However, it failed to make that specific discovery request of the district court either at the hearing on the motion for a preliminary injunction or in its motion for a new trial. At the hearing on the motion for a preliminary injunction, Cromwell asked generally for "two weeks to conduct discovery of the Department of Enforcement and [the Unit] so that we can gain the evidence." Transcript of Preliminary Injunction Hearing at 119, *D.L. Cromwell v. NASD Regulation*, 01 Civ. 728 (S.D.N.Y. Feb. 15, 2001). In its motion for a new trial, Cromwell raises only its alleged recent discovery of the existence and timing of certain cooperating witness statements given to federal prosecutors.

For the reasons stated, we hold that the district court properly consolidated the preliminary injunction hearing with a trial on the merits, and having done so, it correctly analyzed the state actor question under the preponderance of the evidence standard as opposed to the *Jolly* standard. *See Inmates of Attica Correctional Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971) (holding injunctive relief proper "if proved at trial by a fair preponderance of the evidence"); *Jolly*, 76 F.3d at 473.

### III

■ To establish a Fifth Amendment violation, a plaintiff must demonstrate "that in denying the plaintiff's constitutional rights, the defendant's conduct constituted state action." *Desiderio v. National Ass'n of Securities Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir.1999), *cert. denied*, 531 U.S. 1069, 121 S.Ct. 756, 148 L.Ed.2d 659 (2001); *see also United States v. International Bd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir.1991). That is because the Fifth Amendment restricts only governmental conduct, and will constrain a private entity only insofar as its actions are found to be "fairly attributable" to the government. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Corrigan v. Buckley*, 271 U.S. 323, 330, 46 S.Ct. 521, 70 L.Ed. 969 (1926).

■ Actions are "fairly attributable" to the government where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). That nexus exists either (1) where the state "has exercised coercive power [over a private decision] or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"; or (2) where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting *Jackson*, 419 U.S. at 351, 95 S.Ct. 449); *see also Desiderio*, 191 F.3d at 206.

Under the *Blum* test, even heavily-regulated private entities generally are held not to be state actors. *Desiderio*, 191 F.3d, at 206 ("[T]he fact that a business entity is subject to 'extensive and detailed' state regulation does not convert that organization's actions into those of the state."); *see also Jackson*, 419 U.S. at 350, 95 S.Ct. 449 (holding that extensively regulated public utilities are not state actors).

It has been found, repeatedly, that the NASD itself is not a government functionary. *See, e.g., Desiderio,* 191 F.3d at 206 ("The NASD is a private actor, not a state actor. It is a private corporation that receives no federal or state funding. Its creation was not mandated by statute, nor does the government appoint its members or serve on any NASD board or committee."); *United States v. Shvarts,* 90 F.Supp.2d 219, 222 (E.D.N.Y.2000) ("It is beyond cavil that the NASD is not a government agency; it is a private, not-for-profit corporation. It was not created by statute. None of its directors ... are government officials or appointees. It receives no government funding ..., [and] its actions cannot be imputed to the government."), *abrogated on other grounds by, United States v. Coppa,* 267 F.3d 132 (2d Cir.2001); *United States v. Szur,* 1998 U.S. Dist. LEXIS 3519, *39–46, 1998 WL 661484 (S.D.N.Y.1998) (rejecting defendant's claims that the NASD "acted pretextually in conducting their investigations"); *see also Marchiano v. National Ass'n of Securities Dealers, Inc.,* 134 F.Supp.2d 90, 95 (D.D.C.2001) ("[T]he court is aware of no case ... in which NASD Defendants were found to be state actors either because of their regulatory responsibilities or because of any alleged collusion with criminal prosecutors.").

Testimony in an NASD proceeding may entail exposure to criminal liability, but that in itself is not enough to establish the requisite governmental nexus. *Shvarts,* 90 F.Supp.2d at 222 (holding that "questions put to the defendants by the NASD in carrying out its own legitimate investigative purposes do not activate the privilege against self-incrimination"). *Cf. United States v. Solomon,* 509 F.2d 863, 867–71 (2d Cir.1975) (holding no violation of the Fifth Amendment where the government relied on testimony compelled in an earlier proceeding before the heavily-regulated New York Stock Exchange). To prevail, Cromwell must establish additional facts sufficient to satisfy the *Blum* test and to distinguish the present appeal from the general rule. *See Marchiano,* 134 F.Supp.2d at 95 (finding no state action in Rule 8210 demand for testimony *absent actual evidence of governmental encouragement* ).

■ Here, the district court found "no direct evidence of such governmental involvement," and that finding is not clearly erroneous. *D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.,* 132 F.Supp.2d 248, 252 (S.D.N.Y.2001). Cromwell invites a contrary inference from the chronology of certain events: (1) that the Rule 8210 demands followed shortly after individual appellants contested grand jury subpoenas; and (2) that the DOE refused to delay the Rule 8210 interviews until after completion of the Eastern District's criminal investigation. Similarly, Cromwell invites inferences of state involvement based on: (1) the administrative overlap between the Unit and the DOE; (2) the statement of an unidentified FBI agent to an individual appellant that "we are working with the NASD—they know exactly what is going on"; (3) questions posed by the DOE regarding two documents that Cromwell believes had been seized previously by the FBI; (4) the DOE's knowledge of certain government witnesses; and (5) the provision of the Fiserv grand jury subpoena permitting delivery of responsive documents directly to the Unit.

The district court, however, noted that these circumstantial inferences "perhaps would not be drawn so readily by those whose judgment is not tinged with self interest." *D.L. Cromwell Inv., Inc.,* 132 F.Supp.2d at 252. The district court found that the DOE and the authorities pursued similar evidentiary trails because their in-

dependent investigations were proceeding in the same direction: the possibly improper trading in Pallet. The court was not surprised that federal investigators would say they were working with the NASD, or that the Unit occasionally served as a point of transfer for subpoenaed parties (to deliver requested documents to the FBI when the subpoenaed parties experienced technical computer difficulties): the Unit was in fact working with the government, and when it does it may well be a state actor. But though the Unit is a subdivision of Regulation, the district court found that the Unit's role (if and when it is a state actor) cannot fairly and automatically be imputed to the rest of the DOE, which, according to the district court, was effectively "walled off" from the Unit. *Id.* at 253. True, the district court found that the administrative wall was not impermeable; but it accepted Regulation's proffered indicia of good faith, and found no sinister counter-indications.

The Unit and the DOE staff members testified consistently that the Rule 8210 demands issued directly from the DOE as a product of its private investigation, and that none of the demands was generated by governmental persuasion or collusion— either directly or through the Unit. As Cromwell recognizes, the DOE has a regulatory duty to investigate questionable securities transactions. *See, e.g,* Plaintiffs' Reply Memorandum of Law in Support of Motion for Preliminary Injunction at 9, 9 n. 7, *D.L. Cromwell v. NASD Regulation,* 01 Civ. 728 (S.D.N.Y. Feb. 8, 2001) ("As associated persons active in the securities industry, [appellants] are well aware of . . . Regulation's lawful policing of the industry . . . [and] do not seek to have this Court exempt them from the regulation of Defendant."); *see also Szur,* 1998 U.S. Dist LEXIS 3519, at *39, 1998 WL 661484 (finding such a duty). The finding that it fulfilled that duty independent of govern-

mental influence was not clearly erroneous. We need not address whether the record would have supported contrary findings, inferences and conclusions.

## CONCLUSION

The judgment of the district court is affirmed.