# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-221
_____

ANTONY LEE TURBEVILLE,

    Appellant,

    v.

DEPARTMENT OF FINANCIAL
SERVICES,

    Appellee.

_____

On appeal from the Department of Financial Services.
Robert C. Kneip, Chief of Staff.

May 3, 2018

B.L. THOMAS, C.J.

Appellant Antony Lee Turbeville challenges a Final Order of the Department of Financial Services revoking Appellant's insurance license, following the Department's finding that Appellant violated section 626.621(13), Florida Statutes (2015). Appellant argues that: (1) the language of section 626.621(13), Florida Statutes, and the penalty guidelines of Florida Administrative Code Rule 69B-231.090(13) (2015) are ambiguous and should be construed in his favor; (2) that the Department's application of rule 69B-231.090(13) constitutes an ex post facto violation; and (3) that the Department's application of the section 626.621(13), Florida Statutes, to licensees of the Financial

Industry Regulatory Authority ("FINRA") violates a licensee's constitutional right to remain silent.

## Facts

Appellant entered the securities industry in 1987 and registered with several FINRA[1] member firms from 1987 through 2015. Among other products, Appellant sold Collateralized Mortgage Obligations, which are complex debt securities that essentially repackage mortgage loans as bonds purchasable by investors.

On December 30, 2009, FINRA filed a six-count complaint against Appellant, alleging violations of the Securities Exchange Act and the National Association of Securities Dealers rules. FINRA's Extended Hearing Panel conducted a sixteen-day hearing and issued its order on May 31, 2012. The Extended Hearing Panel found that Appellant intentionally or recklessly misrepresented the risks of the Collateralized Mortgage Obligations and sold them to elderly and unsophisticated investors. From July 2005 to July 2007, Appellant, his colleague, and their firm earned approximately $492,500 in commissions from seven customers who lost approximately $1.6 million as a result of Appellant's transactions. The Extended Hearing Panel further found that Appellant, along with two colleagues, violated section 10(b) of the Securities Exchange Act and rule 10b-5 thereunder, and violated FINRA rules 2120 and 2110, and this decision barred Appellant from associating with any FINRA-regulated firm in any capacity.

Appellant appealed this decision to the National Adjudicatory Council ("Council"), FINRA's appellate panel, on June 12, 2012. The Council affirmed the Hearing Panel's factual findings and the sanctions on April 16, 2015.

---

[1] In July 2007, in connection with the consolidation of its regulatory functions of the New York Stock Exchange, the National Association of Securities Dealers (NASD) changed its name to the Financial Industry Regulatory Authority (FINRA). *Eppinger v. Sealy*, 25 So. 3d 69, 72 n.1 (Fla. 5th DCA 2009).

On April 19, 2016, the Department filed a one-count complaint against Appellant, alleging a violation of section 626.621(13), Florida Statutes. An informal hearing was held pursuant to section 120.57(2), Florida Statutes, as Appellant conceded there were no material facts in dispute. The Department's hearing officer filed his Written Report and Recommended Order, stating the following conclusions: (1) the National Adjudicatory Council's decision of April 16, 2015 constituted final disciplinary action by FINRA, and final agency action under state law, pursuant to section 626.621(13), Florida Statutes; (2) Appellant violated section 626.621(13), Florida Statutes; and (3) under Florida Administrative Code Rule 69B-231.090(13), the penalty to be imposed is the highest identical penalty imposed by a national securities association upon which the statutory violation is based, which was the revocation of Appellant's insurance license. The Department issued its final order adopting the hearing officer's findings of fact, conclusions of law, and recommendation, and the Department revoked Appellant's license.

*Analysis*

1. *Is the language of section 626.621(13), Florida Statutes (2015), or Florida Administrative Code Rule 69B-231.090(13) ambiguous?*

We review issues of statutory interpretation de novo. *Sullivan v. Fla. Dep't of Envtl. Prot.*, 890 So. 2d 417, 420 (Fla. 1st DCA 2004).

Administrative agencies are afforded wide discretion in the interpretation of a statute which they administer, but appellate courts are not required to defer to an unreasonable statutory interpretation. *Id.* "If the agency's interpretation is within the range of possible and reasonable interpretations, it is not clearly erroneous and should be affirmed," *Florida Dep't of Education v. Cooper,* 858 So. 2d 394, 396 (Fla. 1st DCA 2003), but "'judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning.'" *Werner v. Dep't of Ins. & Treasurer,* 689 So. 2d 1211, 1214 (Fla. 1st DCA 1997) (quoting *PAC for Equality v. Dep't of State, Fla. Elections Comm'n*, 542 So. 2d 459, 460 (Fla. 2d DCA 1989)). Statutes providing for

revocation or suspension of a license to practice "are deemed penal in nature and must be strictly construed, with any ambiguity interpreted in favor of the licensee." *Beckett v. Dep't of Fin. Servs.*, 982 So. 2d 94, 100 (Fla. 1st DCA 2008) (quoting *Elmariah v. Dep't of Prof'l Reulation, Bd. of Med.*, 574 So. 2d 164, 165 (Fla. 1st DCA 1990)). But "'[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent.'" *Borden v. East-European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006) (quoting *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005)).

Section 626.621, Florida Statutes, as it read at all times pertinent here,[2] provided:

> The department may, in its discretion . . . revoke . . . the license . . . of any . . . agent . . ., and it may suspend or revoke the eligibility to hold a license . . . of any such person, if it finds that as to the . . . licensee . . . any one or more of the following applicable grounds exist under circumstances for which such . . . revocation . . . is not mandatory under s. 626.611:
>
> . . . .
>
> (13) [The licensee has] been the subject of or has had a license . . . or other authority to conduct business subject to any decision . . . by any . . . national securities . . . association involving . . . a violation of any rule or regulation of any national securities . . . association.

---

[2] In 2017, the legislature amended section 626.621, Florida Statutes. § 626.621, Fla. Stat. (2015), amended by ch. 2017-175, § 27, at 23-24, Laws of Fla. The pre-2017 language of section 626.621(13) still exists, but now as section 626.621(12). All references herein to section 626.621(13) refer to the statute as it read in 2015, when FINRA affirmed the sanctions against Appellant.

Florida Administrative Code Rule 69B-231.090 describes specific penalties for violations of section 626.621, Florida Statutes:

> If it is found that the licensee has violated any of the following subsections of Section 626.621, F.S., for which . . . revocation of license(s) . . . is discretionary, the following stated penalty shall apply:
>
> . . . .
>
> (13) Section 626.621(13), F.S. –
>
> > (a) The highest identical penalty to the penalty imposed by the . . . national securities . . . association or, if not available, the highest substantially similar penalty to the penalty imposed.
> >
> > > 1. A revocation, removal, lifetime prohibition, lifetime bar or lifetime ban, or the equivalent, or any suspension with a duration greater than 24 months, shall result in revocation; and
> > >
> > > 2. A suspension with a duration of less than 24 months, shall result in a suspension of equal length.

Appellant argues that the statute and rule are ambiguous, because neither provide guidance for what date should be used to compute penalties under section 626.621(13), Florida Statutes, or more specifically, whether the Extended Hearing Panel's or the National Adjudicatory Council's decisions constitute "final agency action" as described in the statute. Therefore, Appellant argues, the statute must be construed in favor of Appellant, which would define the Extended Hearing Panel's decision on May 31, 2012, as the final agency action and ultimately result in an impermissible ex post facto application of Florida Administrative Code Rule 69B-231.090(13), because Appellant's violation occurred before the rule was promulgated on March 24, 2014.

5

Interpretation of FINRA's rules is exclusively a federal question. *See Turbeville v. Fin. Indus. Regulatory Auth.*, 2016 WL 501982 (M.D. Fla. Feb. 9, 2016) (holding removal to federal court was proper where Tuberville's pleading required court to interpret FINRA's rules). Federal circuit courts have held that "[t]he NAC's decision (or the Hearing Panel's decision if there was no appeal) is FINRA's final action unless FINRA's Board of Governors calls for review." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., Inc.*, 844 F. 3d 414, 418 (4th Cir. 2016). Further, "[a]n appeal to the National Adjudicatory Council from a decision issued pursuant to Rule 9268 or Rule 9269 shall operate as a stay of that decision until the National Adjudicatory Council issues a decision pursuant to Rule 9349 . . . ." FINRA Rule 9311(b).

Thus, the Extended Hearing Panel's decision is final unless appealed to the National Adjudicatory Council. If appealed to the Council, the decision is stayed.

Appellant argues that section 626.621(13), Florida Statutes, is ambiguous, because it does not specify whether the decision of the Extended Hearing Panel or of the National Adjudicatory Council should be used for penalty calculation. This argument incorrectly implies that two parallel decisions co-exist and that the Florida Statutes must differentiate them. On the contrary, as stated above, the Extended Hearing Panel's decision only becomes effective *if* it is not appealed; if appealed, it is stayed until the National Adjudicatory Council makes a decision, which then becomes FINRA's final action. At no time during the procedure do two countervailing decisions co-exist simultaneously; thus, there is no need for section 626.621(13) to specify which decision should be relied upon.

Appellant also argues that section 626.621(13), Florida Statutes, is ambiguous, because it applies to "*any* decision . . . by any . . . national securities . . . association." (Emphasis added.) But this court has found that the Florida Office of Financial Regulation was permitted to apply a statute very similar to the one at issue here, to deny registration to an applicant who was found in a FINRA arbitration decision to have violated securities laws.

6

In *Wojnowski v. State, Office of Financial Regulation*, this court analyzed section 517.161(1)(m), Florida Statutes (2011), which permitted the Office to deny registration to any applicant who "'[h]as been the subject of *any decision* . . . by any . . . national securities . . . association, involving a violation of any federal or state securities or commodities law . . . .'" 98 So. 3d 189, 191 (Fla. 1st DCA 2012) (quoting § 517.161(1)(m), Fla. Stat. (2011) (emphasis added)). This court found that the State was permitted to deny the applicant's registration application, because, after a FINRA arbitration decision, the applicant was clearly "subject to" a decision by FINRA, defined as a "national securities association." And because FINRA made a finding that the applicant had violated state securities laws, the State was permitted to rely on the FINRA award to deny the applicant's registration application. *Id.*

Here, the language of section 626.621(13), Florida Statutes, mirrors almost verbatim the language of section 517.161(1)(m), Florida Statutes, analyzed in *Wojnowski*. Using a virtually identical statute as its authority to do so, the Department revoked Appellant's license on the basis of FINRA's finding that Appellant violated securities laws. In *Wojnowski*, this court noted that the language in section 517.161(1)(m), Florida Statutes, broadly allowed the State to deny registration, if the applicant had been "the subject of *any* decision" by an association such as FINRA. 98 So. 3d at 191 (emphasis in original). This court found the phrase "any decision" to mean precisely that: any decision by an association such as FINRA. *Id.* The phrase "any decision" in section 626.621(13), Florida Statutes, is not ambiguous; it means that the agency is authorized to revoke a license, if the licensee has been the subject to any decision by a national securities association such as FINRA. *See also Wright v. City of Miami Gardens*, 200 So. 3d 765, 771 (Fla. 2016) (holding that a statute allowing mayoral candidate to be disqualified if a bank returned his qualifying fee check for "any reason" was unambiguous, as "any reason" included reasons which were not the fault of the candidate, but finding statute unconstitutional).

Appellant additionally argues that section 626.621(13), Florida Statutes, is ambiguous, because both a licensee and FINRA are allowed to appeal the decision of the Extended

Hearing Panel. Again, section 626.621(13), Florida Statutes, allows the Department to revoke a license, if the licensee has been the subject of "any decision" by an association such as FINRA. The fact that either FINRA or a member may appeal a decision by the Extended Hearing Panel does not create ambiguity; the final decision from either appeal would fall under "any decision," and the Department may revoke a license based on either. *See Wojnowski*, 98 So. 3d at 191; *Wright*, 200 So. 3d at 771.

2. *Does the use of Florida Administrative Code Rule 69B-231.090(13) constitute an ex post facto application?*

A law violates the prohibition against ex post facto laws if two conditions are met: (a) it is retrospective in effect, and (b) it alters the definition of criminal conduct or increases the penalty by which a crime or civil infraction is punishable. Art. I, § 10, Fla. Const; *Gwong v. Singeltary*, 683 So. 2d 109, 112 (Fla. 1996). The ex post facto prohibition applies to criminal or civil penal statutes. *Lescher v. Fla. Dep't of Highway Safety & Motor Vehicles*, 985 So. 2d 1078, 1081 (Fla. 2008). Statutes providing for the revocation or suspension of a license to practice are deemed penal in nature. *Elmariah*, 574 So. 2d at 165.

Section 626.621(13), Florida Statutes, authorizes the Department to revoke a licensee's license, if the licensee has had his or her authority to conduct business subjected to any decision of a national securities association. FINRA is such an association. *Wojnowski*, 98 So. 3d at 191. Appellant argues that the decision of the Extended Hearing Panel operated as FINRA's final action, and he therefore was subject to FINRA's decision, and by extension violated section 626.621(13), Florida Statutes, on May 31, 2012, twenty-two months before the promulgation of Florida Administrative Code Rule 69B-231.090(13). But, Appellant argues that because he committed the violation *before* promulgation of the rule authorizing his punishment, the Department's revocation of his license is an impermissible ex post facto application.

The Department argues that FINRA's final action occurred on April 15, 2016, when the National Adjudicatory Council issued its decision; therefore, Appellant violated section 626.621(13),

8

Florida Statutes, *after* the promulgation of Florida Administrative Code Rule 69B-231.090(13). Thus, Appellee argues, the license revocation was not an ex post facto application.

The applicable FINRA rules state:

9311.  Appeal By Any Party; Cross-Appeal

   (a)  Time to File Notice of Appeal

   A Respondent or the Department of Enforcement or the Department of Market Regulation may file a written notice of appeal within 25 days after service of a decision issued pursuant to Rule 9268 or Rule 9269.

   (b)  Effect

   An appeal to the National Adjudicatory Council from a decision issued pursuant to Rule 9268 or Rule 9269 *shall operate as a stay* of that decision until the National Adjudicatory Council issues a decision pursuant to Rule 9349[.]

9349.  National Adjudicatory Council Formal Consideration; Decision.

   (a) Decision of National Adjudicatory Council, Including Remand

   In an appeal or review of a disciplinary proceeding . . . the National Adjudicatory Council, after considering all matters presented in the appeal or review and the written recommended decision of the Subcommittee or, if applicable, the Extended Proceeding Committee, may affirm, dismiss, modify, or reverse the decision of the Hearing Panel, or if applicable, Extended Hearing Panel[.]

(Emphasis added.) In *Scottsdale*, the United States Court of Appeals for the Fourth Circuit interpreted the FINRA rules to state: "The NAC's decision (or the Hearing Panel's decision if there was no appeal) is FINRA's final action unless FINRA's Board of Governors calls for review." 844 F.3d at 418.

Therefore, the appeal that Appellant initiated stayed the decision of the Extended Hearing Panel rendered in 2012, making it non-final by definition under FINRA Rule 9311(b). *See Century Sur. Co v. de Moraes*, 998 So. 2d 662, 663 n.1 (Fla. 4th DCA 2009) ("[a] stay . . . essentially postpones one proceeding until a contingency occurs").

Appellant cites *Miami-Dade Water and Sewer Authority v. Metropolitan Dade County* for the proposition that an order, judgment or decree is final when the order appealed "constitutes an end to the judicial labor in the trial court, and nothing further remains to be done to terminate the dispute between the parties directly affected." 469 So. 2d 813, 814 (Fla. 3d DCA 1985). Appellant thus argues that the Extended Hearing Panel functions as a trial court, and that after its decision, nothing further remained to be done to terminate the dispute between the parties. Appellant acknowledges that the National Adjudicatory Council may review and reverse or modify the Extended Hearing Panel's decision, but he argues that because the Extended Hearing Panel functions as a trial court, its decision is final and comes after the work of the Extended Hearing Panel is completed.

The decision in *Miami-Dade Water and Sewer* described the rule for finality of a trial court's decision when determining whether the judicial labor was terminated and therefore subject to appellate review. 469 So. 2d at 814. Comparing the Extended Hearing Panel to a trial court and the National Adjudicatory Council to an appellate court is a false analogy. Significant here, parties to a National Adjudicatory Council hearing, with leave of the Council, *may submit additional evidence*. FINRA Rule 9346(b). Likewise, a party may introduce rebuttal evidence in response to proposed additional evidence at this stage. FINRA Rule 9346(c). Additionally, a decision by the National Adjudicatory Council is required to contain "a statement setting

or the findings of fact with respect to any act or practice the Respondent was alleged to have committed or omitted." FINRA Rule 9349(b)(3). Thus, unlike an appellate court reviewing a final order by a trial court, the National Adjudicatory Council may hear new evidence and make findings of fact. It is clear that the "judicial labor of the trial court" is therefore not complete when a member appeals a decision from the Extended Hearing Panel to the National Adjudicatory Council. *Miami-Dade Water & Sewer*, 469 So. 2d at 814. Further, Appellant's trial court analogy is inappropriate because, after a criminal trial, "a conviction on appeal at sentencing is *not yet final.*" *Baxter v. State*, 617 So. 2d 338, 340 (Fla. 1st DCA 1993) (emphasis in original). Here, as after a trial, the lower tribunal's decision is not final for sentencing purposes during the pendency of appeal.

Appellant also argues that the use of "any decision" is impermissible, because it would allow the Department to use the decision of either the Extended Hearing Panel or the National Adjudicatory Council to revoke his license, which could result in an ex post facto application due to the possibility of change in the Department rule. However, the Extended Hearing Panel's decision was stayed when Appellant initiated his appeal to the National Adjudicatory Council. *Scottsdale*, 844 F.3d at 418. A "stay" is the "postponement or halting of a proceeding, judgment, or the like." *Black's Law Dictionary* (10th ed. 2014); *de Morlaes*, 998 So. 2d at 663. Therefore, a decision by the Extended Hearing Panel is postponed, halted, or suspended when an appeal is initiated. Such a suspended judgment therefore would not fall under the "any decision" definition in section 626.621(13), Florida Statutes, because it is stayed until "a contingency occurs"—in this case, the resolution by the National Adjudicatory Council. *Id*.

Therefore, because FINRA's action was not final until April 16, 2015, when it was resolved by the National Adjudicatory Council, the Department's application of Florida Administrative Code Rule 69B-231.090(13) (adopted March 24, 2014) to Appellant's violation of section 626.621(13), Florida Statutes, was not an ex post facto application, as the violation occurred after the promulgation of the rule, based on the Council's affirmance of the Extended Hearing Panel's decision.

*3. Does the use of a FINRA decision in a license-revocation proceeding constitute a violation of the right to remain silent?*

"Because license revocation or suspension proceedings are penal in nature, the fifth amendment right to remain silent applies." *McDonald v. Dep't of Prof'l Regulation*, 582 So. 2d 660, 662 n.2 (Fla. 1st DCA 1991). Appellant argues that even though section 626.621(13), Florida Statutes, does not expressly subject him to discipline for refusal to testify, it allows the discipline indirectly, thus violating the Fifth Amendment to the United States Constitution and Article I, section 9 of the Florida Constitution.

FINRA Rule 8210 requires members to submit sworn testimony in response to FINRA inquiries, and a failure to respond may result in sanctions. Appellant argues that because section 626.621(13), Florida Statutes, allows the Department to revoke a licensee's license if he or she has been subject to a decision by FINRA, a licensee can indirectly have his or her license revoked by failing to respond to a FINRA Rule 8210 request. Because the Fifth Amendment applies to license-revocation proceedings, Appellant argues that the Department cannot revoke a license by relying on the decision of an association that does not afford its members the right to remain silent.

Appellant cites *State ex rel. Vining v. Florida Real Estate Commission*, 281 So. 2d 487 (Fla. 1973), as analogous to the present case. In *Vining*, the Florida Supreme Court analyzed a statute that required licensed realtors to respond by means of a sworn answer to charges made by the Real Estate Commission. 281 So. 2d at 491. The penalty for failure to respond to such charges was the entry of a default judgment against the defendant, which could have resulted in suspension or revocation of the realtor's license. *Id.* The supreme court held that there was "basic constitutional infirmity" in a statute requiring a response under the threat of license revocation or suspension, which amounted to compelling the defendant to be a witness

against himself within the meaning of the Fifth Amendment to the United States Constitution and Article I, section 9 of the Florida Constitution. *Id.* at 491-92. *Vining* is distinguishable, however, because there, testimony was compelled by state action. By contrast, section 626.621(13), Florida Statutes, does not subject licensees or applicants to discipline for refusal to testify, but allows the Department to revoke a license if the licensee's authority to conduct business was subject to a decision by a non-governmental national securities agency.

Because interpretation of FINRA rules is a federal question, Florida courts have not discussed an agency's authority to discipline a licensee as a result of the licensee's refusal to testify before FINRA. The United States Court of Appeals for the Second Circuit has determined that "testimony in an NASD proceeding may entail exposure to criminal liability, but that in itself is not enough to establish the requisite governmental nexus" to trigger Fifth Amendment protection. *D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) (quoting *Jackson Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Such a nexus exists where (1) the state has exercised coercive power over a private decision, or where (2) the private entity has exercised powers that are typically exclusive to the state. *Cromwell,* 279 F.3d at 161 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). A federal district court in New York similarly held that investigations by FINRA do not trigger the Fifth Amendment right against self-incrimination, even though the testimony may later subject a defendant to civil and criminal enforcement proceedings by the government:

It is beyond cavil that the NASD is not a government agency; it is a private, not-for-profit corporation. It was not created by statute. None of its directors or executives are government officials or appointees. It receives no government funding, and not being a part of the government or owing its existence to the government, its actions cannot be imputed to the government nor can its agents bind the government. It is also beyond cavil that questions put to the defendants by the NASD in carrying out its own legitimate investigative purposes do not activate the privilege

13

against self-incrimination nor would the Fourth Amendment place any limitation upon the NASD in pursuing its regulatory functions. Nor would a violation of a rule of the NASD which would subject the defendants to sanctions by that Association, and even to civil and criminal enforcement proceedings by the government, suffice to create an agency relationship between the NASD and the government.

*United States v. Shvarts*, 90 F. Supp. 2d 219, 222 (E.D.N.Y. 2000) (citations omitted; abrogated on other grounds); *see also Cromwell*, 279 F.3d at 162 (2d Cir. 2002) (holding that, because there is not a "sufficiently close nexus" to make NASD actions "fairly attributable" to the government, testimony in an NASD proceeding does not trigger Fifth Amendment protection); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 223 F.R.D 566, 622 (D. Kan. 2004) (holding communication with NASD in connection with investigation could be used to subject members to civil liability).

We agree with these courts that, because testimony to FINRA is not compelled by state action, the privilege against self-incrimination in the Fifth Amendment to the United States Constitution and Article I, section 9 of the Florida Constitution is not activated. Therefore, the Department's reliance on FINRA's decision in punishing Appellant under Florida Administrative Code Rule 69B-231.090(13), pursuant to section 626.621(13), Florida Statutes, is not unconstitutional.

## *Conclusion*

FINRA rules and federal court rulings state that if the Extended Hearing Panel's decision is appealed, the decision by the National Adjudicatory Council is FINRA's final action. Thus, the language of section 626.621(13), Florida Statutes, is not ambiguous, and the Department's application of the statute and Florida Administrative Code Rule 69B-231.090(13) is not an ex post facto application. Additionally, because testimony to FINRA is not compelled by State action, the use of testimony in FINRA license-revocation proceedings does not violate the right to remain silent as found in the Fifth Amendment to the United

States Constitution and Article I, section 9 of the Florida Constitution. We therefore affirm the Department's final order.

AFFIRMED.

MAKAR and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

John A. Richert of Richert Quarles P.A., Clearwater, for Appellant.

Gregory D. Venz, Deputy General Counsel, Marshawn Michael Griffin, Assistant General Counsel, Department of Financial Services, Tallahassee, for Appellee.

15