844 So.2d 717 (2003)
D.T., Appellant,
v.
Dr. Bruce HARTER, Superintendent of Schools for Lee County, Appellee.
No. 2D01-2351.
District Court of Appeal of Florida, Second District.
May 9, 2003.
Dennis L. Avery of Avery, Whigham & Winesett, P.A., Fort Myers, for Appellant.
J. Paul Carland, II, Fort Myers, for Appellee.
FULMER, Judge.
D.T. challenges a final order of the Lee County School Board ("the Board"), which rejects a hearing officer's conclusion of law *718 and imposes the disciplinary sanction of reassignment to an alternative learning center. We reverse because the Board's conclusion that D.T. violated the Lee County Code of Conduct for Students (CCS) was based on an unreasonable interpretation of the word "possession."
On February 22, 2001, a Lee County Sheriff's Department drug-sniffing dog alerted to a car parked in the Riverdale High School lot. The car was identified as belonging to D.T., who was then called out of class. He unlocked the car and gave permission for it to be searched. Dirt, sand, and a leafy substance were found in the bottom of the passenger door storage compartment. A field test conducted on the leafy substance was positive for marijuana. Deputy Stevens described the quantity of the marijuana as an amount that fit in the center of the palm of his hand.
An administrative school-based hearing was held on February 26, 2001, after which D.T. was suspended for ten days and the assistant principal sent a letter to the superintendent requesting that D.T. either be expelled or alternatively placed. The day after the school-based hearing, D.T. was drug tested and the results were negative for marijuana.
Pursuant to section 230.33(8), Florida Statutes (2000), the superintendent filed a petition seeking the alternative placement of D.T. in the Lee County public school system. A due process hearing was conducted on March 28, 2001, before an impartial hearing officer.
D.T.'s mother testified that she had owned the car that was searched for nine years and, on occasion, her two brothers and sister would use it. She stored items in the door storage compartments. Items removed from the passenger storage compartment shortly after the incident included nail polish, a hair clip, napkins, fast food wrappers, a June 2000 water bill, and a June 2000 Winn-Dixie receipt. All of these items belonged to D.T.'s mother. D.T. first started driving the car in January 2001.
D.T. confirmed that he had been driving the car primarily to school since January 2001. Other members of the family had keys to the car. D.T. did not have any friends in the car. From the moment the substance was found and throughout the process, D.T. repeatedly told the assistant principal that it was not his marijuana and he had never seen it before.
The hearing officer found that D.T. had no knowledge of the presence of the marijuana and no reason to believe that it was likely to be present in the car. The hearing officer concluded that "possession," as used in the CCS, included "knowledge of the possession." The hearing officer explained this conclusion:
To find that the student must, at the very least, have knowledge that the contraband exists or have a reasonable belief that it could exist within his or her dominion and control is very reasonable. To find otherwise would apply such a strict standard that no student would ever have a fair hearing because the student would automatically be guilty without hearing the other side.
Because D.T. had no knowledge, the hearing officer recommended that D.T. be returned to Riverdale High School.
The Board adopted the hearing officer's factual findings but rejected the conclusion of law concerning the definition of possession "because the Hearing Officer has improperly applied a criminal law definition to the term `possession.'" The Board then reasoned:
The Board has discretion to define the term possession as it is used in the [CCS] and does not define the term to *719 include a requirement that a student have `knowledge' of the substance that they possess.
The Board concluded that D.T. violated the CCS and ordered D.T. reassigned to an alternative learning center as a sanction.[1]
On appeal, D.T. argues that proof of knowledge was necessary to support the Board's action. The Board argues that its definition of possession, an undefined term in the CCS, is reasonable and therefore should stand.
Courts defer to the expertise of an agency in interpreting its own rules. See State Contracting & Eng'g Corp. v. Dep't of Transp., 709 So.2d 607, 610 (Fla. 1st DCA 1998). "Generally the construction of a regulation by the agency charged with its enforcement and interpretation is entitled to great deference, but the court need not defer to the agency's construction when that construction amounts to an unreasonable interpretation, or is clearly erroneous." Langston v. Jamerson, 653 So.2d 489, 490 (Fla. 1st DCA 1995) (citing Legal Envtl. Assistance Found., Inc. v. Bd. of County Comm'rs, 642 So.2d 1081, 1083-84 (Fla.1994)).
Section 230.23(6)(d), Florida Statutes (2000), mandates that the Board adopt a code of conduct that shall include:
4. Notice that illegal use, possession, or sale of controlled substances, as defined in chapter 893, ... by any student while such student is upon school property or in attendance at a school function is grounds for disciplinary action by the school and may also result in criminal penalties being imposed.
The notice required by this provision appears in the CCS as follows:
NOTE: Illegal use, possession, or sale of controlled substances, as defined in chapter 893, by any student while on school property or in attendance at a school function is grounds for disciplinary action and may also result in criminal penalties being imposed.
In addition, the zero tolerance policy provision in the CCS states, in relevant part:
In order to comply with the State Board of Education Rule for Zero Tolerance for school-related violent crimes and for the Gun-Free School Act, families and students must understand that certain criminal acts, violent acts and disruptive behavior occurring on School Board property ... must be reported to local law enforcement. These acts include but are not limited to: ... possession or sale of illegal drugs ....
The CCS lists twenty-six offenses which subject a student to disciplinary action and provides that all offenses related to zero tolerance shall be reported to local law enforcement agencies. Offense 7 is "[p]ossession, use, or sale of alcohol, drugs, controlled substances, or counterfeit controlled substances."
The Board's interpretation of the term "possession" conflicts with the plain language of the provisions cited above. References in the CCS to the "illegal" possession of drugs and controlled substances and contemplation of not only a schoolbased sanction but also possible criminal prosecution support the hearing officer's interpretation of the term possession and *720 render the Board's interpretation unreasonable.
We recognize that "the conduct and discipline of the public schools and public school system is vested primarily in the county boards of public instruction and so long as disciplinary measures imposed by them are within reason, they will not be disturbed." Satan Fraternity v. Bd. of Pub. Instruction, 156 Fla. 222, 22 So.2d 892 (1945). While we can envision a rational basis for such a regulation as the Board seeks to impose in this case, the CCS, as written, does not explicitly contain such a regulation. Therefore, we do not address whether the Board would violate a student's rights by implementing a regulation that penalized innocent conduct of possession specifying that no knowledge of the thing possessed was required.
Reversed and remanded.
SALCINES and CANADY, JJ., concur.
NOTES
[1] The Board also cited to federal cases and concluded that "substantive due process does not require that the District prove `knowledge' of possession in student discipline matters." The cases relied on by the Board, C.B. ex rel. Breeding v. Driscoll, 82 F.3d 383 (11th Cir. 1996), and Hammock ex rel. v. Keys, 93 F.Supp.2d 1222 (S.D.Ala.2000), address students' civil rights claims brought under 42 U.S.C. § 1983. Our decision herein, however, does not turn on a substantive due process analysis.