869 So.2d 1233 (2004)
OFFICE OF FIRE CODE OFFICIAL OF COLLIER COUNTY FIRE CONTROL AND RESCUE DISTRICTS, Appellant,
v.
FLORIDA DEPARTMENT OF FINANCIAL SERVICES and District School Board of Collier County, Appellees.
No. 2D03-1869.
District Court of Appeal of Florida, Second District.
March 31, 2004.
*1234 Melville G. Brinson, III, Smoot Adams Edwards Doragh & Brinson, P.A., Fort Myers, for Appellant.
Gabriel Mazzeo, Tallahassee, for Appellee Department of Financial Services.
Jon D. Fishbane and Ashley D. Lupo of Roetzel & Andress, Naples, for Appellee District School Board of Collier County.
CANADY, Judge.
The Office of the Fire Code Official of Collier County (FCO) appeals an order of the Department of Financial Services (DFS) dismissing a petition for declaratory statement concerning firesafety inspection requirements for new educational facilities. Because the DFS erred in concluding that it has no jurisdiction with respect to firesafety inspection requirements for new educational facilities, we reverse the order dismissing the petition for declaratory statement.

I. BACKGROUND
This case turns on the proper interpretation of several statutory provisions in chapter 633 (Fire Prevention and Control) and chapter 1013 (Educational Facilities), Florida Statutes (2003), relating to firesafety standards for educational facilities. The DFS determined that the "proper agenc[ies] to render a declaratory statement on new construction of educational and ancillary plants and facilities are the local [school] boards or the Department of Education." The District School Board of Collier County supports the DFS's position. The FCO argues that the statutes should be understood as giving the DFS jurisdiction over firesafety requirements for new educational facilities. The parties all agree that the DFS has jurisdiction with respect to firesafety requirements for existing educational facilities. The dispute relates solely to authority regarding new educational facilities. In brief, the FCO relies on the pertinent provisions of chapter 633 (Fire Prevention and Control), while the DFS relies on certain provisions of chapter 1013 (Educational Facilities). The DFS's position that it has no regulatory authority with respect to inspections of new educational facilities is reflected in rules it has adopted governing firesafety inspections for educational facilities. See Fla. Admin. Code R. 69A-58.004(2)(d) (providing that rules for inspection of educational facilities "[a]re not applicable to new construction or new buildings") (formerly 4A-58.004(2)(d)).

II. ANALYSIS
Various provisions of chapter 633 are pertinent to the issue before us. We conclude that these provisions support the FCO's argument and are dispositive. At the outset we note that under chapter 633 the responsibilities of the State Fire Marshal are carried out through the DFS. "The head of the [DFS] is the Chief Financial Officer." § 20.121(1), Fla. Stat. (2003). The Chief Financial Officer is designated as the State Fire Marshal, § 633.01, and the Division of State Fire Marshal is a part of the DFS, § 20.121(2)(b). The State Fire Marshal thus acts through the DFS, and the DFS has the authority to adopt the Florida Fire Prevention Code. § 633.01(1).
Section 633.01(6), (7) provides:

*1235 (6) Only the State Fire Marshal may issue, and, when requested in writing by any substantially affected person or a local enforcing agency, the State Fire Marshall shall issue declaratory statements pursuant to s. 120.565 relating to the Florida Fire Prevention Code and the Life Safety Code.
(7) The State Fire Marshal shall adopt and administer rules prescribing standards for the safety and health of occupants of educational and ancillary facilities pursuant to ss. 633.022, 1013.12, 1013.37, and 1013.371. In addition, in any county that does not employ or appoint a local fire official, the State Fire Marshal shall assume the duties of the local fire official with respect to firesafety inspections of educational property required under s. 1013.12(2)(b), and the State Fire Marshal may take necessary corrective action as authorized under s. 1013.12(5).
(Emphasis added).
Section 633.022 provides in pertinent part:
(1) The [DFS] shall establish uniform firesafety standards that apply to:
....
(b) All new, existing, and proposed... public schools ... of which standards the State Fire Marshal is the final administrative interpreting authority.

(Emphasis added).
The cited provisions of chapter 633 make clear beyond any doubt the authority of the DFS with respect to firesafety standards for new public school facilities. They not only expressly provide for the adoption of such standards by the State Fire Marshal and the DFS but also expressly grant the State Fire Marshal the specific authority to issue declaratory statements relating to the State Fire Code and final administrative interpreting authority regarding the firesafety standards that apply to new public schools. The language of the statutory text is direct and unambiguous. On the issue before us, it is subject to only one reasonable interpretation.
None of the provisions of chapter 1013 relied on by the appellees are inconsistent with the relevant provisions of chapter 633. Indeed, the pertinent provisions of chapter 1013 reinforce the conclusion that the DFS has jurisdiction with respect to firesafety standards for new educational facilities. The appellees argue that the "more specific" provisions of chapter 1013 relating to firesafety take precedence over the general provisions of chapter 633 and that those provisions of chapter 1013 have implicitly repealed the authority granted by chapter 633 to the DFS with respect to firesafety for new educational facilities. These arguments find no support in the text of chapter 1013. Although chapter 1013 clearly places responsibilities related to compliance with firesafety standards for new educational facilities on the Department of Education and local school boards, it recognizes the regulatory authority of the DFS to establish the applicable standards.
Section 1013.37 provides in pertinent part:
(1) UNIFORM BUILDING CODE.... It is also the responsibility of the [D]epartment [of Education] to develop, as a part of the uniform building code, standards relating to:
....
(c) The safety of occupants of educational and ancillary plants as provided in s. 1013.12, except that the firesafety criteria shall be established by the State Fire Marshal in cooperation with the Florida Building Commission and the department and such firesafety requirements *1236 must be incorporated into the Florida Fire Prevention Code.

....
(2) APPROVAL.
(a) Before a contract has been let for the construction, the department, the district school board, ... or its authorized review agent must approve the phase III construction documents. A district school board ... may reuse prototype plans on another site, provided the facilities list and phase III construction documents have been updated for the new site and for compliance with the Florida Building Code and the Florida Fire Prevention Code and any laws relating to firesafety ... which are in effect at the time a construction contract is to be awarded.
(b) In reviewing plans for approval, the department, the district school board, ... or its review agent as authorized in s. 1013.38, shall take into consideration:
....
17. Conformity with the Florida Fire Prevention Code.

(Emphasis added).
Section 1013.371 provides, in pertinent part:
(2) ENFORCEMENT BY BOARD. It is the responsibility of each board to ensure that all plans and educational and ancillary plants meet the standards of the Florida Building Code and the Florida Fire Prevention Code and to provide for the enforcement of these codes in the areas of its jurisdiction.... Plans or facilities that fail to meet the standards of the Florida Building Code or the Florida Fire Prevention Code may not be approved....
(3) ENFORCEMENT BY DEPARTMENT.As a further means of ensuring that all educational and ancillary facilities constructed or materially altered or added to conform to the Florida Building Code standards or Florida Fire Prevention Code standards, each board that undertakes the construction, renovation, remodeling, purchasing, or lease-purchase of any educational plant or ancillary facility, the cost of which exceeds $200,000, may submit plans to the [D]epartment [of Education] for approval.
(Emphasis added).
Section 1013.38 provides in pertinent part:
(1) Boards shall ensure that all new construction, renovation, remodeling, day labor, and maintenance projects conform to the appropriate sections of the Florida Building Code, Florida Fire Prevention Code, or, where applicable as authorized in other sections of law, other building codes, and life safety codes.
(2) Boards may provide compliance as follows:
(a) Boards or consortia may individually or cooperatively provide review services under the insurance risk management oversight through the use of board employees or consortia employees, registered pursuant to chapter 471, chapter 481, or part XII of chapter 468.
(b) Boards may elect to review construction documents using their own employees registered pursuant to chapter 471, chapter 481, or part XII of chapter 468.
(c) Boards may submit phase III construction documents for review to the department.
(d) Boards or consortia may contract for plan review services directly with engineers and architects registered pursuant to chapter 471 or chapter 481.
(Emphasis added).
These provisions of chapter 1013 can only reasonably be understood as requiring *1237 that in planning for the construction of new educational facilities the Department of Education and the district school boards follow the firesafety standards established by the DFS in the Florida Fire Prevention Code. The references to "enforcement" by the Department of Education and the district school boards do not establish that the regulatory authority of the DFS has been displaced or superceded. On the contrary, the Department of Education and the district school boards are expressly directed to conform their building construction plans to the standards developed pursuant to the regulatory authority of the DFS. The fact that the Department of Education and the district school boards are required to ensure that the construction plans for new educational facilities meet the applicable firesafety requirements does not mean that the regulatory authority with respect to those standards has been vested in them. Section 1013.37(1)(c), relating to the construction of educational facilities, specifically acknowledges that the "firesafety criteria" related to the "safety of occupants of educational and ancillary plants" are to "be established by the State Fire Marshal in cooperation with the Florida Building Commission and the [D]epartment of Education," and "must be incorporated into the Florida Fire Prevention Code." (Emphasis added).
Chapter 633 unambiguously grants the DFS authority to establish firesafety standards for new educational facilities. Chapter 1013 acknowledges that authority of the DFS and requires the Department of Education and district school boards to develop construction plans for new educational facilities that comply with the firesafety standards established by the DFS. There is no inconsistency between chapter 633 and chapter 1013. The statutory provisions consistently reflect the eminently sensible policy judgment that the regulatory authority for determining firesafety standards for new educational facilities should be the same as the authority for determining such standards for existing educational facilities. It would indeed be anomalous to divide the standard-setting authority for new facilities from the standard-setting authority for existing facilities. Under such a scheme, a new facility could be determined to be safe under the standards of the Department of Education, while an identical existing facility was determined to be unsafe under the standards of the DFS. And a facility that was determined to be safe as new construction by the Department of Education could shortly thereafter and with no degradation in the facility be determined to be unsafe by the DFS. The relevant statutory texts make clear that the legislature has not chosen to establish such an anomalous arrangement of regulatory authority for firesafety standards.
We recognize that "an administrative agency is afforded wide discretion in the interpretation of a statute which it is given the power and duty to administer," and that an agency's interpretation of such a statute "will not be overturned on appeal unless it is clearly erroneous." Republic Media, Inc. v. Dep't of Transp., 714 So.2d 1203, 1205 (Fla. 5th DCA 1998). This deferential standard of review requires that we uphold an agency's statutory interpretation if it "is within the range of possible and reasonable" interpretations. Id.; see also Fla. Dep't of Educ. v. Cooper, 858 So.2d 394 (Fla. 1st DCA 2003). It does not require that we defer to an implausible and unreasonable statutory interpretation adopted by an administrative agency. D.T. v. Harter, 844 So.2d 717 (Fla. 2d DCA 2003). Here, as the foregoing analysis demonstrates, the DFS's interpretation of the pertinent statutory provisions is clearly erroneous.

*1238 III. CONCLUSION
The order dismissing the petition for declaratory statement therefore is reversed, and the case is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
ALTENBERND, C.J., and COVINGTON, J., Concur.