890 So.2d 417 (2004)
Asher G. SULLIVAN, Jr., St. Augustine Trust Dated May 16, 1996, Appellant,
v.
FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Assad O. Knio and Selma Knio, Appellees.
No. 1D04-0475.
District Court of Appeal of Florida, First District.
December 29, 2004.
*418 Gary S. Edinger, Esquire, Gainesville, for Appellant.
Jack Chisolm, Deputy General Counsel and Stan M. Warden, Assistant General Counsel, Tallahassee, for Appellees.
BENTON, J.
The Asher G. Sullivan, Jr. St. Augustine Trust dated May 16, 1996 (Trust) appeals a final order of the Department of Environmental Protection (DEP) which denied the Trust eligibility to participate in the Florida Petroleum Liability and Restoration Insurance Program (FPLRIP). A petroleum discharge took place while the Trust's notice of eligibility for FPLRIP was in effect, but was reported only during the subsequent "tail" period specified in the insurance policy on which the Trust's notice of eligibility was predicated. Because section 376.3072, Florida Statutes (1997), renders the Trust eligible for FPLRIP participation in these circumstances, we reverse.
Owners or operators of underground petroleum storage tanks must demonstrate financial responsibility in the event of bodily injury or property damage resulting from the accidental discharge of petroleum. See 40 C.F.R. § 280.93(a) (1998). Obtaining private insurance on specified terms that render the owner or operator eligible for participation in FPLRIP is one way to demonstrate the requisite financial responsibility. See § 376.3072(2)(b)(2.), Fla. Stat. (1997); § 376.309, Fla. Stat. (1997); 40 C.F.R. § 280.97 (1998). If such private insurance is selected, federal law requires[1] and FPLRIP supplies "first-dollar coverage" up to $150,000, subject to a deductible of $10,000 (or other amount set out in the policy), and private insurance provides the excess. See § 376.3072(2)(d)(2.)(d.), Fla. Stat. (1997); 40 C.F.R. § 280.93(a)(1) & (b)(1) (1998); Fla. Admin. Code R. 62-761.400(3)(a)(2.).
*419 Here, when it purchased from Assad O. and Selma Knio land on which an abandoned gas station was located, the Trust obtained petroleum liability insurance from a private insurer, Commerce and Industry Insurance Company, as contemplated by 40 C.F.R. § 280.93(a)(1) & (b)(1) (1998), and filed a certificate of insurance with DEP pursuant to section 376.3072(2)(b)(2.), Florida Statutes (1997). Covering the period from September 3, 1997, through September 3, 1998  with million-dollar limits for any one loss and for all losses in the aggregate (exclusive of legal defense costs), see 40 C.F.R. § 280.93(a)(1) & (b)(1) (1998)  the policy provided insurance "excess over any restoration (corrective action) funding for storage tanks whose owners qualify for and are eligible for reimbursement from the Florida Inland Protection Trust Fund as part of the Florida Petroleum Liability and Restoration Insurance Program."
In keeping with applicable state and federal law, the certificate of insurance which the Trust furnished DEP contained terms required by 40 C.F.R. § 280.97(b)(2)(2.)(e.) (1998), including the following:

The insurance covers claims otherwise covered by the policy that are reported to the "Insurer" within six months of the effective date of cancellation or non-renewal of the policy except where the new or renewed policy has the same retroactive date or a retroactive date earlier than that of the prior policy, and which arise out of any covered occurrence that commenced after the policy retroactive date, if applicable, and prior to such policy renewal or termination date. Claims reported under such extended reporting period are subject to the terms, conditions, limits, including limits of liability and exclusions of the policy.
(Emphasis supplied.) Based on this certificate, DEP issued a notice of eligibility for September 3, 1997, through September 3, 1998, under section 376.3072(2)(b)(2.), Florida Statutes (1997), and 40 C.F.R. § 280.93(a)(1) & (b)(1) (1998).
Meanwhile, Pipeline Industries (Pipeline) contracted with the Trust to remove underground storage tanks prior to September 3, 1998. Despite these arrangements, work on tank removal did not begin until September 15, 1998. On or about September 17, 1998, Pipeline discovered a petroleum discharge on the property, and promptly reported it to DEP. Thereafter, the Trust applied to DEP for restoration coverage under the FPLRIP.
On October 21, 1998, DEP proposed to deny the Trust's application, stating as grounds that, after September 3, 1998, the Trust was "not properly enrolled in FPLRIP" under section 376.3072(2)(b)(2.), Florida Statutes (1997), because the Trust did not renew the insurance policy. In response, the Trust requested a formal administrative hearing on November 7, 1998. On September 4, 2003, the hearing took place before an administrative law judge of the Division of Administrative Hearings.[2] The recommended (and final) order(s) that resulted found: "[T]he discharge ... most likely occurred prior to September 3, 1998, within the Policy period. The discharge was reported to the *420 Department within the extended reporting period recited in the Certificate of Insurance."
Even so, eligibility was denied below based on DEP's interpretation of section 376.3072(2)(b)(2.) & (4.), Florida Statutes (1997), which provides:
2. Except as provided in paragraph (a), to be eligible to be certified as an insured facility, the applicant must demonstrate to the department that the applicant has financial responsibility for third-party claims and excess coverage, as required by this section and 40 C.F.R. s. 280.97(h) [sic] and that the applicant maintains such insurance during the applicant's participation as an insured facility.
....
4. Upon report of a discharge, the department shall issue an order stating that the site is eligible for restoration coverage unless the insured has intentionally caused or concealed a discharge or disabled leak detection equipment, has misrepresented facts in the affidavit filed pursuant to subparagraph 1., or cannot demonstrate that he or she has obtained and maintained the financial responsibility for third-party claims and excess coverage as required in subparagraph 2.
DEP denied eligibility, although coverage was in effect when the discharge occurred, solely because the policy had expired by the time the discharge was reported.
But DEP's interpretation of the FPLRIP participation criteria ignores the federally mandated six-month reporting provision tacked on for discharges that take place while a policy is in effect. While in the present case the discharge was not discovered or reported to DEP until some two weeks after the policy expired, the discharge occurred while coverage was still in effect. The Trust's insurance policy providing coverage for discharges occurring from September 3, 1997, until September 3, 1998, was the basis for the notice of eligibility that DEP issued to the Trust for the same period, and on which the Trust was entitled to rely.
At issue is a question of statutory interpretation, as to which the standard of review is de novo. Like other administrative agencies, DEP "is afforded wide discretion in the interpretation of a statute which it is given the power and duty to administer," Office of Fire Code Official of Collier County Fire Control & Rescue Dists. v. Fla. Dep't of Fin. Servs., 869 So.2d 1233, 1237 (Fla. 2d DCA 2004) (citation omitted), but nothing requires "that we defer to an implausible and unreasonable statutory interpretation adopted by an administrative agency." Id."If the agency's interpretation is within the range of possible and reasonable interpretations, it is not clearly erroneous and should be affirmed," Fla. Dep't of Educ. v. Cooper, 858 So.2d 394, 396 (Fla. 1st DCA 2003), but "judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning." Werner v. Dep't of Ins. & Treasurer, 689 So.2d 1211, 1214 (Fla. 1st DCA 1997) (quoting PAC for Equal. v. Dep't of State, Fla. Elections Comm'n, 542 So.2d 459, 460 (Fla. 2d DCA 1989)). Here, the state and federal statutory schemes and the implementing regulations promulgated by EPA and DEP all point to the conclusion that DEP has misinterpreted applicable provisions, contrary to their plain meaning. Scenarios like the one here were contemplated when the Environmental Protection Agency drafted 40 C.F.R. § 280.97(b)(2)(2.)(e.) (1998), giving an insured six months after a policy expires in which to report covered claims that accrued while coverage was still in force. 40 C.F.R. § 280.97(b)(2)(2.)(e.) (1998). The *421 following appeared in the Federal Register when the EPA adopted the regulation:
[T]he Agency is concerned that a claims-made contract may leave gaps in coverage if, for example, a claim is reported after the expiration of a policy for a release that began prior to the expiration date.... The Agency also agrees with the comment that it would be unnecessary to include an extended reporting period clause in an occurrence-based contract because by definition, such policies cover losses occurring during the policy period regardless of when they are reported. Therefore paragraph 2(e) of the endorsement and certificate of insurance (§§ 280.97(b)(1) and 280.97(b)(2)) are required only in the case of a claims-made contract.
53 Fed.Reg. 43,322-01 (Oct. 26, 1988) (codified at 40 C.F.R. pt. 280). In the present case, the insurance policy was in effect on the date of the discharge, yet the discharge was not discovered until some two weeks after the policy expired. As the excerpt from the Federal Register attests, the six-month "extended reporting period" was created to deal with just such contingencies.
The DEP's argument that the Trust has not "obtained and maintained" the insurance necessary to demonstrate financial responsibility under section 376.3072, Florida Statutes (1997), does not withstand scrutiny. DEP is arguing that the statute requires an insured to have a policy providing coverage for discharges on dates other than the dates on which the discharges actually occur. Under DEP's view, coverage on the date of discharge is immaterial if the policy is not renewed after the discharge takes place. This is not a logical reading of the controlling provisions, and is plainly contrary to the federal law the state statute is designed to implement. When, as here, a discharge occurs during the policy period, and a claim follows within six months of the policy's expiration date, financial responsibility has been maintained. 40 C.F.R. § 280.97(b)(2)(2.)(e.) (1998). The Trust is eligible for participation in the FPLRIP because it was financially responsible on the date of the discharge, as evidenced by the notice of eligibility that DEP issued.
DEP's final order declaring the Trust ineligible for participation in the FPLRIP is reversed, and the case is remanded for further proceedings consistent with this opinion.
ALLEN and DAVIS, JJ., Concur.
NOTES
[1] Under 42 U.S.C. § 6991c & 6991d (1998), "federal regulations allow a state to implement, with EPA approval, its own UST program to take the place of the federal program." Zurich Am. Ins. Co. v. Whittier Props., Inc., 356 F.3d 1132, 1135 (9th Cir.2004). Section 376.3072, Florida Statutes (1997), implements Florida's underground storage tank program by establishing the FPLRIP, which is intended to "provide restoration funding assistance to facilities regulated by the [DEP's] petroleum storage tank rules." § 376.3072(1), Fla. Stat. (1997).
[2] At the hearing, the Trust put on evidence that the discharge probably occurred prior to September 3, 1998. The Knios, who had intervened in the administrative proceeding in support of the Trust's application, called William Case Zegel, a professional engineer with a doctorate, who was the only expert who testified concerning when the discharge occurred. On the basis of modeling he had done, Dr. Zegel concluded that the discharge likely took place before September 3, 1998. DEP maintained that the discharge occurred on September 15, 1998, but failed to offer any evidence in support of its assertion.