973 So.2d 535 (2007)
ST. JOHNS COUNTY SCHOOL DISTRICT, Appellant,
v.
Charles F. O'BRIEN, Appellee.
No. 5D06-1172.
District Court of Appeal of Florida, Fifth District.
December 28, 2007.
Rehearing Denied February 5, 2008.
*537 Thomas J. Leek and Kelly V. Parsons of Cobb & Cole, Daytona Beach, for Appellant.
Charles F. O'Brien, Porite Vedra Beach, pro se.
THOMPSON, J.
St. Johns County School District challenges a final order of the Florida Commission on Human Relations ("FCHR") affirming the Administrative Law Judge's finding that the School District discriminated against the appellee, Charles F. *538 O'Brien, on the basis of a perceived disability of alcoholism.[1]
Mr. O'Brien alleged in his suit filed pursuant to the Florida Civil Rights Act, sections 760.01-.11, Florida Statutes (2004), that he was not offered a teaching position at Nease High School because of a perceived disability of alcoholism. The School District contends that Mr. O'Brien's preliminary qualification for employment was revoked and he was disqualified for the teaching position because of inaccurate answers on his application. Specifically, he did not disclose two DUI's that were revealed during a criminal background check. The School District contends the Administrative Law Judge ("ALJ") erred in its recommended order, adopted as part of the FCHR's final order, because its findings of fact and conclusions of law were not supported by competent, substantial evidence. Further, Mr. O'Brien was not hired because of a facially neutral policy that applied to all applicants for employment. We reverse because Mr. O'Brien failed to establish a prima facie case of disability discrimination.
Because the School District's procedures and policies are at issue, we detail the chronology of the case. In January 2004, the School District discontinued its paper application process and adopted a computerized application process, known as PATS. The School District sent a letter to all previous paper applicants, including Mr. O'Brien, at the beginning of December 2003, instructing them to reapply for employment using PATS, and notifying them that the School District would no longer use any previously filed paper applications.[2]
Once an applicant completes a PATS application, he or she is preliminarily qualified based upon their responses, including any representation about prior criminal history. When individual schools within the School District post open teaching positions to the PATS system, PATS matches the applicant's specific area of interest and automatically generates an email notifying the applicant of the open position. The applicant must then access PATS and specifically apply for the position. The school interviews the applicants and selects the one who best meets its needs.
A two-part review process called "A & B" then initiates. Part A includes a drug test and fingerprinting to check the applicant's criminal background. Part B requires the applicant to attend an orientation session. If a criminal background check reveals a criminal history that is inconsistent with the applicant's representations in the PATS system, the applicant is automatically disqualified, and the school may choose another applicant from those interviewed or repost the position.
On 24 February 2004, Mr. O'Brien completed a PATS application and represented that he had no criminal history, contrary to answers he had given in his previous paper application. As a result, he initially qualified as an applicant and entered the general pool of preliminarily qualified applicants.
Nease High School posted a physical science/chemistry position for the 2004-2005 *539 school year, and Mr. O'Brien applied for the position. He was one of three candidates selected for an interview with Mr. Corson, Vice Principal of Nease. Although Mr. O'Brien did not hold a valid State of Florida teaching certificate and lacked substantive teaching experience, Mr. Corson selected him for the open position as the most qualified candidate interviewed, thereby initiating the A & B review process.
The School District conducted Mr. O'Brien's criminal background check and learned that the representations on his PATS application were inaccurate. Mrs. Geiger, Director of Instructional Personnel of the Human Resources Department (HR), learned of the DUI's on 7 July 2004. She notified Mr. Corson and Mr. Robert Schiavone, Principal of Nease, that Mr. O'Brien was automatically, disqualified for the position and his offer of employment had been rescinded. She did not tell them about the DUI's, only that Mr. O'Brien's application and criminal background did not match. School District policy required Mr. Schiavone to either repost the position or hire one of the other two candidates from. Mr. O'Brien's applicant pool. Mr. Schiavone chose to repost the position on 13 July 2004.
The School District's policy is that any applicant with two or more DUIs, regardless of whether their PATS application was accurate, must provide proof of treatment to requalify as an applicant. This policy allows an applicant to cure what would otherwise be a defective application. The purpose is to fulfill the School District's obligations under its safe and drug free workplace policy, to increase the likelihood that the applicant will be a successful employee, and to ensure student safety in case the applicant is required to drive students.
The day after the School District disqualified Mr. O'Brien, he met with Mr. Springfield, Director of HR, and Mrs. Geiger. Mrs. Geiger recalled that. Mr. Springfield informed Mr. O'Brien of the results his criminal background check and that he could requalify for employment by updating the inaccurate answers on his PATS application and providing proof of treatment for his DUI convictions. However, Mr. Springfield could not recall whether he advised Mr. O'Brien of his need to document treatment or that he could reapply. Mrs. Geiger confirmed on 8 July that Mr. O'Brien's paper application disclosed the DUI convictions and date and place of treatment. Mrs. Geiger posted Mr. O'Brien's treatment requirement on PATS on 22 July and also sent him a courtesy email reminder that day.
Mr. O'Brien could have provided proof of treatment in person, by facsimile, or electronically. After the 8 July meeting, Mr. O'Brien revised his PATS application to accurately reflect his criminal background. A School District committee reviewed his answers and agreed that he could apply for an employment position upon proof of treatment. The School District's Executive Council met on 12 July and confirmed the committee's, decision to require Mr. O'Brien to provide proof of treatment.
After the Nease principal reposted the physical science/chemistry position on 13 July, Mr. O'Brien reapplied on 15 July for the teaching position. PATS again notified Mr. Corson and Mr. Schiavone of Mr. O'Brien's interest. Even though he had not yet provided proof of treatment, Mr. Corson and Mr. Schiavone again considered him for the reposted teaching position. Mr. Corson called Mr. O'Brien to let him know that he was being considered for the position and that, in light of his recent *540 interview, there was no need for another interview.
On 26 July 2004, Mr. Corson and Mr. Schiavone recommended another candidate, Debra Nall, to HR for the teaching position. Although Ms. Nall had not applied in the initial posting of the position, she had a Florida state teaching certificate in general science and biology, many years of teaching experience, and an excellent recommendation from her former principal. When HR recommended Ms. Nall, Mr. O'Brien had not yet requalified as an applicant, and, therefore, he was not eligible for the position despite further consideration by Mr. Corson and Mr. Schiavone. Mr. O'Brien brought his military records to the School District's office and satisfied proof of treatment on 27 July 2004, one day after it hired Ms. Nall. Mrs. Geiger advised him that HR immediately requalified him as an eligible applicant.
In September 2004, Mr. O'Brien filed a complaint of discrimination with FCHR alleging that the School District did not hire him for the reposted teaching position because of his "perceived" disability of alcoholism and challenging the legality of the proof of treatment policy. He claimed a violation of the FCRA pursuant to section 760.10.
On 18 July 2005, the FCHR issued a "no cause" determination, and Mr. O'Brien then requested relief from the Department of Administrative Hearings. On 21 October 2005, an ALJ conducted an evidentiary hearing to determine whether the School District discriminated against Mr. O'Brien on the basis of perceived disability. A human resources specialist represented Mr. O'Brien. At the outset of the hearing, Mr. O'Brien's representative affirmed that he was not asserting a claim that the proof of treatment requirement violated ADA; he was proceeding solely under the disparate treatment claim. Mr. O'Brien chose not to testify at the hearing and examined only those witnesses offered by the School District. He introduced no evidence.
On 29 December 2005, the ALJ found that the School District discriminated against Mr. O'Brien by revoking his offer of employment and requiring him to reapply, requiring him to provide proof of treatment and failing to notify him of such requirement, and reposting the teaching position and hiring a non-disabled individual. Its Recommended Order required that the School District "cease and desist in the practices mentioned; that the [School District] be directed to hire [O'Brien] upon his submitting an application for employment."
After considering the School District's Exceptions to the Recommended Order, FCHR issued an Order Awarding Affirmative Relief from an Unlawful Employment Practice and Remanding Matter for Determination of Additional Relief. The School District appealed.
Mr. O'Brien brought suit under the FCRA, sections 760.01-.11, Florida Statutes (2004). The FCRA is construed in conformity with the federal ADA and related regulations. Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000); Greene v. Seminole Elec. Co-op., Inc., 701 So.2d 646, 647 (Fla. 5th DCA 1997). Section 760.10 makes it unlawful for an employer to "fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to . . . privileges of employment, because of such individual's . . . handicap."
Disparate treatment claims are cognizable under the ADA. Raytheon Co. v. Hernandez, 540 U.S. 44, 53, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). The McDonnell *541 Douglas[3] burden shifting analysis of Title VII employment discrimination actions applies in ADA claims. Raytheon, 540 U.S. at 49-50 n: 3, 124 S.Ct. 513 (holding in drug addiction or perceived drug addiction disability cases that an employer's unwritten policy against rehiring former employees terminated for any violation of its misconduct rules was legitimate, non-disability based reason under the ADA). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination; the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. Id. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual. Id.
To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual; and (3) he was subject to unlawful discrimination as the result of his disability. Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 910 (11th Cir.1996). The ADA defines disability as a(1) physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such impairment. Id. at 911.
A plaintiff is "perceived as" being disabled if he meets one of three conditions: (1) he has a physical impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) has no physical or mental impairment but is treated by an employer as having such an impairment. 29 C.F.R. 1614.203(a)(5); Rossbach v. City of Miami, 371 F.3d 1354, 1359-60 (11th Cir.2004). For a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is "substantially limiting" and significant. Id. at 1360. To fall within the "perceived as" disability, it is necessary that an employer entertain misperceptions. It must believe the individual has a substantially limiting impairment that does not exist or that there is a substantially limiting impairment when, in fact, the impairment is not so limiting. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). A substantially limiting impairment must preclude that individual from more than one type of job, a specialized job, or a particular job of choice. Id. at 492, 119 S.Ct. 2139.
Whether the agency applied the correct prima facie elements of the law or correctly determined that there was direct evidence of discrimination is subject to de novo review by this court. Sullivan v. Fla. Dep't of Envtl. Prot., 890 So.2d 417, 420 (Fla. 1st DCA 2004). To the extent that the agency's final order relied on evidence to support its factual conclusions, this court's task' on review is to determine whether competent substantial evidence in the record supports the agency's decision. See § 120.68(10), Fla. Stat. (2005).
*542 Mr. O'Brien presented no evidence that the School District perceived him as disabled; he only cross-examined the School District's witnesses. HR followed neutral policies upon discovering the discrepancy between his PATS application and the existence of two previous DUI convictions. The requirement that an applicant provide proof of treatment is a policy that permits the disqualified individual to become qualified and, in fact, benefits the individual with a DUI record. The evidence demonstrates that Mr. Corson and Mr. Schiavone continued to consider Mr. O'Brien for the reposted position even though he had not yet requalified as an applicant. Once Mr. O'Brien provided proof of treatment, he was requalified and able to accept any offer of employment from the School District.
Mrs. Geiger did not inform Mr. Corson or Mr. Schiavone of the reason for Mr. O'Brien's disqualificationjust that his PATS application did not agree with his criminal background check. They did not have knowledge of his prior DUI convictions. They continued to consider his application after the reposting, but he was no longer the most qualified applicant. Because Mr. O'Brien did not requalify until after the School District offered Ms. Nall the position, the school policy foreclosed any choice to select Mr. O'Brien. The neutral district policy, not perceived discrimination, prompted the selection. Thus, Mr. O'Brien failed to establish the first element of a prima facie case of disability discrimination.
If Mr. O'Brien had proved a prima facie case of disability discrimination, under McDonnell Douglas, the burden would then shift to the School District to articulate a legitimate, nondiscriminatory reason for its employment action. The only evidence before the ALJ was that the School District had a neutral policy to automatically disqualify an individual whose PATS application and criminal background check did not match. Further, the School District required an applicant with two or more DUI convictions to provide proof of treatment. Thus, the School District demonstrated a legitimate, nondiscriminatory reason for its employment decision and ultimately hired a more qualified individual.
After the employer produces a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to "demonstrate that the [employer's] articulated reason for the adverse employment action is a mere pretext for discrimination." McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817. The plaintiff must present evidence sufficient to cast doubt on the employer's proffered nondiscriminatory reasons to demonstrate that the proffered reasons were not the actual motivation, but pretextual reasons for its conduct. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997). However, Mr. O'Brien produced no evidence to satisfy this burden. Therefore, his case of perceived disability discrimination fails.
The School District's policies were neutral, legitimate, and non-discriminatory. See Raytheon, 540 U.S. at 52-53, 124 S.Ct. 513 (applying disparate treatment framework to evaluate actual or perceived drug addiction disability, court held employer's neutral no-rehire policy is a legitimate, nondiscriminatory reason under the ADA). That Mr. Corson and Mr. Schiavone had no knowledge of Mr. O'Brien's DUI conviction illustrates the application of a neutral policy. Mr. O'Brien failed to present evidence to cast doubt on the employer's legitimate reasons for its questioned policies.
The FCHR in its final order agreed with the School District that the ALJ had failed to complete the required burden-shifting analysis to determine whether discrimination *543 was proved by circumstantial evidence. Nevertheless, it held that it was not error because the ALJ had based his decision upon direct evidence that the School District showed discriminatory practices of requiring documentation of treatment, failing to follow standard procedure in notifying applicants, and reposting the position. The FCHR thus concluded that the causal relationship was not a requirement of the prima facie case.
We disagree with the FCHR and ALJ that no causal relationship is required. The "because of element of a prima facie case of disability discrimination is well established Florida law. See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 656 (11th Cir. 1998); Gordon, 100 F.3d 907, 910; Downing v. United Parcel Serv., Inc., 215 F.Supp.2d 1303, 1308, .1312 (M.D.Fla.2002); Brand v. Fla. Power Corp., 633 So.2d 504, 510 n. 10 (Fla. 1st DCA 1994). It applies equally to the three enumerated definitions of disability under the ADA. The McDonnell Douglas prima facie case method was never intended to be rigid, mechanized, or ritualistic; it is merely a procedural device to facilitate an orderly focused evaluation of the evidence as it bears on the critical question of discrimination. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). Once the claimant demonstrates a prima facie case, and the employer responds with a non-discriminatory reason, the inference of discrimination is eliminated, and the McDonnell Douglas framework disappears. The plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against her because of her disability. Id. The "because of element cannot be dismissed as unnecessary; in fact, it is the ultimate test.
In this case, Mr. O'Brien failed to demonstrate the first element of a prima facie case that the School District perceived him as disabled. The only substantial competent evidence demonstrated the School District's legitimate, nondiscriminatory reasons for its employment decision to hire a more qualified applicant. The evidence does not give rise to an inference that the School District discriminated against Mr. O'Brien because of his disability. We hold that the ALJ and FCHR erred as a matter of law in concluding that the School District discriminated against Mr. O'Brien in violation of the ADA or FCRA and, accordingly, we reverse.
REVERSED.
PALMER, C.J., and LAWSON, J., concur.
NOTES
[1] Alcoholism is a disability. Title II Technical Assistance Manual, § 2.2000.
[2] When Mr. O'Brien first applied to Nease High School on 28 July 2002, the School District used a paper application. He was offered a math teaching position despite his disclosure of two DUI convictions in 1986 and 1988. He first accepted, then later rejected the position to work elsewhere. His application expired of its own accord on 28 July 2003. The School District did not transfer the contents of the paper applications to the PATS system.
[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792; 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), later refined in Texas Dep't of Com'ty Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and restated in St. Mary's Honor Center v. Hicks. 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).