BENTON, J.
 

 Stuart Kessler appeals the final order of the Department of Management Services (DMS) cutting off his benefits under the State Group Disability Income Self Insurance Plan (Plan) on grounds his termination from state employment rendered him ineligible to receive disability insurance benefits. We have jurisdiction.
 
 See
 
 § 120.68, Fla. Stat. (2008); Fla. R.App. P.
 
 *760
 
 9.030(b)(1)(C). Unable to agree with DMS’s interpretation of pertinent rules, we reverse and remand with directions to reinstate Mr. Kessler’s benefits.
 

 The relevant facts are uncontroverted. Mr. Kessler was working for the Florida Department of Revenue (DOR) as a Selected Exempt Service employee when he became disabled. Diagnosed with acute, myelogenous leukemia, he was granted medical leave and began receiving disability insurance benefits under the Plan in the fall of 2007. Effective June 20, 2008, however, when DOR terminated his employment, DMS cut off his disability insurance benefits.
 

 Mr. Kessler has never questioned DOR’s decision to discharge him and replace him with somebody able to do the job. But he did request reinstatement of disability insurance benefits up to the allowable maximum of one year. When DMS denied his reinstatement request on the basis that his termination from employment rendered him ineligible to receive any further disability insurance benefits, Mr. Kessler filed a petition seeking an informal hearing in order to contest the agency’s decision.
 

 At the informal hearing, Mr. Kessler contended, as he does on appeal, that the rules do not condition eligibility to receive benefits under the Plan on continued state employment. But Sandie Wade, a benefits administrator with the Division of State Group Insurance, testified that she interpreted the rules as predicating eligibility for disability insurance benefits on the disabled person’s retaining salaried employment in the state Senior Management Service or Selected Exempt Service.
 
 [1]
 
 Adopting her view, DMS entered a final order denying Mr. Kessler’s request to reinstate disability insurance benefits.
 

 Florida Administrative Code Rule 60P-6.0075(4)(c) directs the state to “pay for ... insurance coverage for each full-time member of the ... Selected Exempt Serviced] ... [including o]ne hundred percent of the premium for the state individual disability insurance policy.” The Plan, set forth in Florida Administrative Code Chapter 60P-9.005, describes the amount and duration of state individual disability insurance benefits:
 

 If an employee, while insured under the Plan and as a result of sickness or injury, becomes totally disabled, the Plan will pay biweekly benefits to the employee for the period of such disability. Such benefits are payable in an amount of sixty-five (65) percent of the employee’s basic daily earnings at the date of disability. Benefits are payable from the first benefit day of any one continuous period of disability up to a maximum of one year (364 days)....
 

 Fla. Admin. Code R. 60P-9.005. Under this provision, Mr. Kessler contends, he was entitled to receive disability insurance benefits for the maximum one-year (364-day) period, and cutting benefits off prematurely on June 20, 2008, violated governing language in the Plan, and was not required by any duly promulgated administrative rule adopted pursuant to authority conferred on DMS by section 110.123(5), Florida Statutes (2008).
 

 We reject DMS’s argument that a rule definition of “employee” trumps the
 
 *761
 
 plain language of the benefits provision, when read as a whole. An “[ejmployee” is defined as “an individual holding a salaried Senior Management Service or Selected Exempt Service position with any state agency.” Fla. Admin. Code R. 60P-9.001(3). Only employees so defined have disability insurance coverage under the Plan, to be sure.
 
 See
 
 Fla. Admin. Code R. 60P-9.009(1) (“The date of termination of coverage will be ... [,][i]n the event of termination of employment, the employment termination date.”). When a covered employee becomes disabled, moreover, the amount of the disability benefit depends on “the employee’s basic daily earnings at the date of disability.” Fla. Admin. Code R. 60P-9.005. But disability payments are payable under the Plan for the entire “period of disability up to a maximum of one year (364 days).”
 
 Id.
 
 Discharging an employee entitled to disability benefits under the Plan before the year is up (when, for example, it becomes clear the employee will be unable to return to work) does not destroy entitlement under the Plan.
 

 The rules make clear that payments of disability insurance benefits may persist after state employment ends: They provide for coordinating disability insurance benefits payable under the Plan with disability retirement benefits, when a disabled employee retires.
 
 [2]
 
 The rules offset disability retirement benefits to reduce disability insurance benefits the Plan makes otherwise payable.
 

 (2) Benefits paid under the Plan will be reduced by any benefits paid or payable:
 

 (c) As regular or disability retirement benefits under the State of Florida Retirement System.
 

 Fla. Admin. Code R. 60P-9.005(2)(c). Yet under no circumstances can a state employee who is still earning a salary also receive disability retirement benefits.
 
 [3]
 
 To be eligible for disability retirement benefits, a member of the Florida Retirement System must have “terminate[d] all employment.” Fla. Admin. Code R. 60S-4.007(2)(c).
 

 The rules thus address situations where former state employees, if otherwise eligible, receive benefits under the Plan, and so refute DMS’s contention that Mr. Kes-sler’s termination from state employment rendered him
 
 ipso facto
 
 ineligible for disability insurance benefits before the whole period of his disability (up to a maximum of one year) had run its course. The rules plainly contemplate payments of disability insurance benefits to payees who are no longer working and who cannot, therefore, at the time of the payments, still be employees “holding a salaried Senior Management Service or Selected Exempt Service position with any state agency.” Fla. Admin. Code R. 60P-9.001(3). Employees like Mr. Kessler whose state employment comes to an end are nevertheless eligible to receive benefits under the Plan.
 

 
 *762
 
 We acknowledge that section 110.123(5), Florida Statutes (2008), grants DMS primary “responsib[ility] for the administration of the state group insurance program,” and directs DMS to “initiate and supervise the program as established by this section and ... adopt such rules as are necessary to perform its responsibilities.”
 
 See generally Roman Fedo, Inc. v. Dep’t of Highway Safety & Motor Vehicles,
 
 889 So.2d 179, 180 (Fla. 4th DCA 2004) (holding judicial deference is owed agency’s statutory interpretation that is not clearly erroneous),
 

 We begin with the premise that “a reviewing court must defer to an agency’s interpretation of an operable statute [which the agency is charged with administering because the subject matter of the statute lies within the agency’s putative expertise] as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence.”
 
 McKenzie Check Advance of Fla., LLC v. Betts,
 
 928 So.2d 1204, 1215 (Fla.2006) (Cantero, J., concurring in part and dissenting in part) (quoting
 
 Pub. Employees Relations Comm’n v. Dade County Police Benevolent Ass’n,
 
 467 So.2d 987, 989 (Fla.1985)). Even though we do not reach appellant’s contention that rules creating a state insurance program and serving much the same purpose as the provisions of an insurance policy should, like an insurance policy, be construed against the insurer and drafter, and in favor of the insured,
 
 see generally Saff v. Dep’t of Admin., Div. of State Employees’ Ins.,
 
 1991 WL 833815, at *7 (Fla.Div.Admin.Hrgs. Sept. 19, 1991) (recommended order) (“Once, under Section 110.123(5), the Respondent decides the contractual benefits to be offered, and they are reduced to writing, the State of Florida and its employees are contracting parties. The Respondent does not have the ability to interpret contractual provisions by rule or non-rule agency policy, as it would a regulatory statute or rule under ordinary principles of administrative law. Contractual disputes, such as the one that arose in this case, are decided under traditional contract principles.” (internal citation omitted)),
 
 [4]
 
 we are unable to uphold the order under review.
 

 Judicial deference never requires that courts adopt an agency’s interpretation of a statute or rule when the agency’s interpretation cannot be reconciled with the plain language of the statute or rule, taken as a whole:
 

 “If the agency’s interpretation is within the range of possible and reasonable interpretations, it is not clearly erroneous and should be affirmed,”
 
 Fla. Dep’t of Educ. v. Cooper,
 
 858 So.2d 394, 396 (Fla. 1st DCA 2003), but “judicial adherence to the agency’s view is not demanded when it is contrary to the statute’s plain meaning.”
 
 Werner v. Dep’t of Ins. & Treasurer,
 
 689 So.2d 1211, 1214 (Fla. 1st DCA 1997) (quoting
 
 PAC for Equal. v. Dep’t of State, Fla. Elections Comm’n,
 
 542 So.2d 459, 460 (Fla. 2d DCA 1989)).
 

 Sullivan v. Fla. Dep’t of Envtl. Prot.,
 
 890 So.2d 417, 420 (Fla. 1st DCA 2004). Here, DMS’s interpretation of Florida Administrative Code Rule 60P-9.005 cannot be squared with the language of the rule, taken as a whole.
 

 The order is reversed and the case is remanded with directions to reinstate Mr.
 
 *763
 
 Kessler’s disability insurance benefits effective June 20, 2008.
 

 KAHN and VAN NORTWICK, JJ., concur.
 

 [1]
 

 . As DMS argues, there is language to this effect in
 
 Swann v. Department of Management Services, Division of State Group Insurance,
 
 2008 WL 4974769 (Fla.Div.Admin.Hrgs. Nov. 13, 2008) (recommended order) adopted by final order, No. 08-14876 (DMS Dec. 17, 2008). But the result in
 
 Swann
 
 can also be fully explained by the fact that Swann, the terminated employee, failed to show any disability that prevented his performing a single task at work.
 
 See id.
 
 at *2 (“Petitioner continued to perform the duties required of him ... up through the last day of his employ-men t.“).
 

 [2]
 

 . The Plan directs that disability benefits be offset not only by disability retirement benefits but also by regular retirement benefits. Ms. Wade testified that regular retirement benefits would be offset against disability benefits awarded to a retired employee who returned to work (after a year's hiatus) and then became disabled. The DMS hearing officer seemed to suggest that regular retirement benefits are offset against disability benefits paid to persons still working but enrolled in the deferred retirement option program. These possible scenarios have, in any event, nothing to do with the rule's treatment of disability retirement benefits.
 

 [3]
 

 . "A member who retires under disability, subsequently recovers and reenters covered employment shall notify the Division immediately to have his disability [retirement] benefits discontinued....” Fla. Admin. Code R. 60S-4.007(9).
 

 [4]
 

 . The Division of Administrative Hearing’s website indicates DMS adopted this order
 
 in toto
 
 by final order rendered November 12, 1991. State of Florida, Division of Administrative Hearings, www.doah.state.fl.us/ internet/search (enter “Saff” as Petitioner) (last visited July 14, 2009). We express no view on the merits of the order.