IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

AMANDA POPE AND
ANASTASIA, INC.,

      Appellant,

v.

DANIEL AND DONNA
GRACE, JOSEPH AND LINDA
NOFTELL, PAUL AND DEBRA
LINGER, ANN PASTORE,
THOMPSON AND DANA
FILLMER, JOSEPH AND
DOTTIE SCRUGGS, STEPHEN
FREY, LINDSEY BRANLITT
AND JACQUELINE PORTER,
TRUSTEES OF THE LAND
TRUST DATED MAY 1, 2005,
AND DEPARTMENT OF
ENVIRONMENTAL
PROTECTION,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-258

_____/

Opinion filed November 6, 2014.

An appeal from an order of the Florida Department of Environmental Protection.
Herschel T. Vinyard, Jr., Secretary.

Thomas J. Morton and Timothy J. Perry of Oertel, Fernandez, Bryant & Atkinson,
P.A., Tallahassee, for Appellant.

Matthew Z. Leopold, General Counsel, Brynna J. Ross and Sidney C. Bigham, III, Senior Assistant General Counsel, Florida Department of Environmental Protection, Tallahassee, for Appellee.

MAKAR, J.

Repairs to the foundation of a dune walkover structure triggered this legal dispute, one in which two beachfront residential property owners, Amanda Pope and Anastasia, Inc., contest a final order of the Secretary of the Department of Environmental Protection (DEP), which held that a permit for the repairs was unnecessary. At issue is whether DEP's interpretation of section 161.053(11)(b), Florida Statutes, which exempts "activities" that do not "cause a measurable interference with the natural functioning of the coastal system" from permitting requirements, is clearly erroneous. We hold that it is not.

I.

This litigation involves all property owners within Milliken's Replat, which is a pocket-sized neighborhood of ten residential lots, each on Milliken Lane, a short cul-de-sac off of A1A that lies just west of and perpendicular to the Atlantic Ocean, nestled in a southern Crescent Beach community adjacent to the Matanzas River and State Forest. Amanda Pope and Anastasia, Inc., own the only two beachfront lots, which adjoin one another at the cul-de-sac's end. Their westerly neighbors, Daniel and Donna Grace and twelve other property owners, collectively

2

own the eight landward lots situated just off the beachfront. For simplicity, we will refer to these property owners together as the Graces, who are the lead named appellees.

The plat of the Milliken Lane properties, drafted in 1983, has a line drawn between the beachfront lots of Ms. Pope and Anastasia, Inc., which is labeled "6' WIDTH WALKWAY FOR WALKWAY TO BEACH." Sometime thereafter (the record doesn't say when), a dune walkover was built, which lies within the six-foot easement straddling their respective property lines, to facilitate the ability of all Milliken Lane property owners to access the beach by crossing over, and leaving undisturbed, the underlying sand dunes. Milliken's Replat is subject to a Road Maintenance Agreement, which was recorded in 1994 and requires the property owners to, among other things, maintain a "certain six (6) foot wide walkway reflected on the plat running between the cul-de-sac at the end of Milliken Lane to the Atlantic Ocean, including existing dunes walk-over structure." The agreement also states that "[s]uch road and walkway shall be maintained by the parties to this agreement [ . . . ] in a condition so as to make it free and passable in perpetuity."

Repairing the neighborhood's dune walkover has been a contentious issue for years. During a March 2011 meeting, all of the property owners, except Ms. Pope and Anastasia, Inc., agreed that the dune walkover needed to be repaired. A site inspection conducted by DEP also recommended repairing or replacing a

3

major portion of the walkover due to the age of the wood and its hardware. Ms. Pope and Anastasia, Inc., countered that the other property owners previously rejected their proposal for repairs and that they "have had long-standing objections to [the other owners] performing work on the walkover structure without their input and authorization."

Believing it advisable to do so,[1] the Graces applied for a permit to repair the walkover. Counsel for DEP, however, advised them the repair work may qualify for an exemption. Shortly thereafter, they made a request for an exemption determination, which DEP granted because "the proposed work appear[ed] to be exempt from the permitting requirements of [the] Department pursuant to Section 161.053(11), Florida Statutes." DEP later issued an amended exemption notice, which described the factual context of the exemption:

> The repair and maintenance [of the walkover] is to consist of replacement of bolts, screws, plates and other fasteners; replacement of wood members such as handrails, posts above walkover deck planks, deck planks and stringers; and repairs to support members such as the addition of sister posts next to existing posts. Repair and maintenance activities shall not result in the realignment or

---

[1] At oral argument, counsel for DEP explained that an application for a permit under the circumstances in this case is unnecessary because the exemption in subsection 11(b) is self-executing. Counsel suggested that obtaining an opinion from a competent engineer that the proposed activity would cause no measurable interference with the natural functioning of the coastal system enables the proposed activity to move forward without any involvement by DEP. Involving DEP—as Graces did in seeking a permit—has the benefit of an exemption determination, which can be subject to review as Ms. Pope and Anastasia, Inc., were able to do here.

4

reconfiguration of the walkover outside of the extents of the original structure. With the exception of the minimal ground disturbance required to repair posts or to add sister posts, no vegetation shall be removed nor dune topography altered.

Based on the above description, the proposed work is not expected to cause a measurable interference with the natural functioning of the coastal system. Therefore, the Department has determined that the proposed work satisfies the exemption requirements of Section 161.053(11)(b), Florida Statutes. All debris must be removed and disposed of landward of the coastal construction control line.

In response, Ms. Pope and Anastasia, Inc., filed petitions for an administrative hearing. Before the hearing took place in May 2012, the repairs commenced. As to the foundation work, two construction workers sistered the walkover's posts, a process that involved using posthole diggers to manually excavate around the base of existing posts, installing new posts, and bolting the new and old ones together.

After a hearing on the matter at which a DEP expert testified about the effects of the repair work, the administrative law judge (ALJ) issued a recommended order concluding that under subsection 161.053(11)(b), the "proposed project would not cause measurable interference with the natural functioning of the coastal system, and that the criteria for the grant of an exemption from the CCCL permitting requirements were met." Nonetheless, the ALJ concluded that DEP could not rely on subsection 161.053(11)(b); instead, only the "existing structures" exemption in subsection 161.053(11)(a) was deemed relevant. The ALJ concluded that subsection 11(a) is a specific statutory provision dealing

with "existing structures" that controls over the more general provision in subsection (11)(b) dealing with "activities." As such, the Graces were not entitled to an exemption.

In its final order, however, DEP rejected the ALJ's legal interpretation of section 161.053(11), concluding that the only issue was whether the foundation repair work on an existing structure such as a dune walkover, while not exempt under section 161.053(11)(a), could be exempt if the "activities" in repairing the foundation met the requirements of section 161.053(11)(b), specifically that they cause no measureable interference with the natural functioning of the coastal system. In rejecting the ALJ's approach, DEP noted the absence of any statutory language that excluded "activities" related to "existing structures" from the exemption in subsection 11(b). It also noted that the ALJ's approach was incorrect because "applying both paragraphs (a) and (b) of subsection 161.053(11) to the type of activity in this case would not render either provision meaningless. Indeed, the proposed activity in this case could qualify for an exemption under either provision if the activity meets the requirements of each exemption." This appeal follows.

II.

This is a case of statutory interpretation, one in which an agency's conclusions of law are subject to de novo review. <u>Sullivan v. Fla. Dep't of Envtl.</u>

Prot., 890 So. 2d 417, 420 (Fla. 1st DCA 2004). We have discussed this appellate

standard as it applies to DEP before:

> Like other administrative agencies, DEP 'is afforded wide discretion in the interpretation of a statute which it is given the power and duty to administer,' but nothing requires 'that we defer to an implausible and unreasonable statutory interpretation adopted by an administrative agency.' If the agency's interpretation is within the range of possible and reasonable interpretations, it is not clearly erroneous and should be affirmed,' but 'judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning.

Id. (internal citations omitted).

Under the relevant statutory framework, DEP may grant a permit to allow

coastal construction when certain requirements are met; it may also grant

exemptions to those requirements. The two exemptions at issue are found in

subsections 161.053(11)(a) and (b), which provide:

> (11)(a) The coastal construction control requirements defined in subsection (1) and the requirements of the erosion projections in subsection (5) do not apply to any modification, maintenance, or repair of any existing structure within the limits of the existing foundation *which does not require, involve, or include any additions to, or repair or modification of, the existing foundation of that structure*. [. . .]
>
> (b) **Activities seaward of the coastal construction control line which are determined by the department not to cause a measurable interference with the natural functioning of the coastal system are exempt from the requirements of subsection (4).**

§ 161.053(11)(a)-(b), Fla. Stat. (2014) (emphases added). The ALJ ruled that

subsection 11(a) was the relevant exemption, and thereby exclusive, because it

7

relates to "existing structures." But it determined subsection 11(a) was inapplicable because the italicized language excludes repairs to an existing foundation of an "existing structure." The bolded exemption in subsection 11(b) is the alternative that DEP concluded it could apply to any "activity" it determines will not "cause a measurable interference with the natural functioning of the coastal system."

The crux of the dispute is whether the subsection 11(a) sets forth the *exclusive* exemption available under the circumstances or whether an exemption under neighboring subsection (11)(b) is available. In other words, if a project does not qualify for exemption under (11)(a) because the proposed modification, maintenance, or repairs are to an existing foundation on an existing structure, can it nonetheless receive an exemption under (11)(b), if that repair project will cause no "measurable interference with the natural functioning of the coastal system"? Ms. Pope and Anastasia, Inc., say no; the Graces and DEP say yes.

We conclude that the two exemptions can be read harmoniously to support DEP's interpretation of its authority to grant the exemption at issue. First of all, it is apparent that the exemption in subsection 11(a) is designed to exempt only repairs, such as replacing decking or railings on an existing walkover structure, other than foundation work. It is not available for repairs to an existing foundation underlying an existing structure. But nothing in the language of subsection 11(a)— or the statutory framework generally—says that the unavailability of an exemption

8

under 11(a) for foundation work precludes consideration of other statutory exemptions, such as the one for "activities" in subsection 11(b)—or for "minor activities" in subsection 11(c) for that matter.[2] Had the Legislature intended that no

[2] Subsection 11(c) says the:

> [D]epartment may establish exemptions from the requirements of this section for minor activities determined by the department not to have an adverse effect on the coastal system. Examples of such activities include, but are not limited to:
> 1. Boat moorings;
> 2. Maintenance of existing beach-dune vegetation;
> 3. The burial of seaweed, dead fish, whales, or other marine animals on the unvegetated beach;
> 4. The removal of piers or other derelict structures from the unvegetated beach or seaward of mean high water;
> 5. Temporary emergency vehicular access, if the affected area is immediately restored;
> 6. The removal of any existing structures or debris from the upland, if there is no excavation or disturbance to the existing topography or to beach-dune vegetation;
> 7. Construction of a new roof overhang extending no more than 4 feet beyond the confines of the existing foundation during modification, renovation, or reconstruction of a habitable structure within the confines of the existing foundation of that structure which does not include any additions to or modification of the existing foundation of that structure;
> 8. Minor and temporary excavation for the purpose of repairs to existing subgrade residential service utilities (e.g., water and sewer lines, septic tanks and drainfields, electrical and telephone cables, and gas lines), if there is minimal disturbance and the grade is restored with fill compatible in both coloration and grain size to the onsite material and any damaged or destroyed vegetation is restored using similar vegetation; and
> 9. Any other minor construction that has an effect similar to the above activities.

9

exemptions whatsoever be available for repair work on existing foundations of existing structures, and that any repairs no matter how minor require a permit, it could have said so; it could have also said that subsection 11(a) is the exclusive exemption for repairs to existing structures. It has done neither. We therefore conclude that subsection 11(a) does not preclude an exemption under 11(b). The subsections easily coexist, and can be read harmoniously to say that repairs to existing structures are generally permissible without a permit, but that a permit is required for repairs to an existing foundation of an existing structure unless no "measurable interference with the natural functioning of the coastal system" would result.

We agree with DEP that the situation here is much like the analysis of whether testimony meets a hearsay exception. Simply because one specific hearsay exception doesn't apply, doesn't mean others can't be considered. See, e.g., Doe v. Broward Cnty. Sch. Bd., 744 So. 2d 1068, 1073 (Fla. 4th DCA 1999) (trial court erred in concluding that "section 90.803(23) preempts all other hearsay exceptions when the out-of-court statements are made by a child victim of abuse."). Absent a clear indication from the Legislature that permits are always required for repair work on foundations of existing structures, no matter how inconsequential, we cannot read section 161.053(11) to impose such a limitation.

---

§ 161.053, Fla. Stat.

Buttressing its position, DEP views the term "activities" in subsection 11(b) as unambiguous when read in context with its cross-referenced subsection (4), which deals with altering, excavating, or constructing on property seaward of the coastal construction control line (CCCL). DEP claims that altering, excavating, or construction activities that do not cause a measurable interference with the natural functioning of the coastal system are exempt from permitting under subsection 11(b)—regardless of whether an "existing structure" is involved or work to the foundation is performed. This makes good sense. Work on an existing foundation need not always result in harm that requires a permit or mitigation. Instead, such work may often involve repairs—as is the case here—that do not "cause a measurable interference with the natural functioning of the coastal system" thereby justifying an exemption. DEP presented unrebutted expert testimony to this effect. It makes little sense, given the availability of an exemption for such inconsequential activities, to require a permit when no measureable environmental harm would result.

Finally, DEP's interpretation is given great deference because it is charged with enforcing this statute. See Fla. Hosp. v. Agency for Health Care Admin., 823 So. 2d 844, 847 (Fla. 1st DCA 2002). Because DEP's interpretation gives effect to the plain and ordinary meaning of section 161.053(11), and gives a more reasonable interpretation of the exemption as applied in the coastal construction

11

context, we conclude it is not clearly erroneous; it is eminently reasonable. See Kessler v. Dep't of Mgmt. Servs., Div. of State Group Ins., 17 So. 3d 759, 762 (Fla. 1st DCA 2009) (an interpretation doesn't have to be the only possible interpretation, it just has to be reasonable). That similar statutory language has been in place since 1975 makes the presumption of interpretive correctness even stronger. See Ch. 75-87, § 2, at 186, Laws of Fla.; Dep't of Admin. v. Nelson, 424 So. 2d 852, 858 (Fla. 1st DCA 1982); State, Dep't of Com., Div. of Labor v. Matthews Corp., 358 So. 2d 256, 260 (Fla. 1st DCA 1978).

## III.

In conclusion, we find that the DEP's interpretation of section 161.053(11) is reasonable. We therefore affirm its final order, which exempted foundation repairs on the dune walkover at issue.

AFFIRMED.

THOMAS, and ROWE, JJ., CONCUR.